NARCISSE RIVARD *et al.*

*v.*

REUBEN G. GARDNER.

1. IDEM SONANS. Where a bill was filed against defendants by the name of Sinclair, and the process issued against them under the name of St. Clair, and was returned served upon them under the latter name, *Held*, that these names in ordinary enunciation are not distinguishable, and the doctrine of *idem sonans* is applicable, and there is no variance.

2. OFFICER—*defect in return of, on summons cured by the decree.* Where the return of the sheriff on the summons does not show the date of the service, but the decree of the court recites "that the defendants were duly served," such recital cures the defect in the return.

3. FALSE RETURN—*parol evidence.* When a writ is returned by an officer as duly served, the defendant is estopped from contradicting such return, as against third persons who have acquired rights under the judgment of the court.

4. SAME—*remedy of the party injured.* In such case, the remedy of the injured party is by an action against the officer for a false return.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

The facts in this case sufficiently appear in the opinion.

Mr. W. H. HERNDON, for the plaintiff in error.

Messrs. EDWARDS & HAY, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of ejectment brought by the plaintiffs in error, in which a verdict and judgment were rendered against them in the Circuit Court, whereupon they sued out a writ of error. The plaintiffs, on the trial, deraigned title from the government to one John Sinclair, and then put in evidence a deed from John Sinclair to themselves, bearing date November 5, 1851. The defendants then offered the record of a suit in chancery in the Circuit Court of Sangamon county, in which county the land is situate. The suit was brought at the June Term, 1853, by said John Sinclair against the plaintiffs in error, who were his children, for the purpose of setting aside said deed offered by the plaintiffs in evidence. At the August Term, 1853, the court pronounced a decree annulling the deed. To the introduction of this record in evidence, the plaintiffs objected upon several grounds, which we will consider in their order.

The bill was filed against the defendants by the name of Sinclair, but process issued against them under the name of St. Clair, and was returned served upon them under the latter name. It is urged that this summons ran against different parties from those named in the bill, and must be presumed to have been served on different parties, and hence the court acquired no jurisdiction. On looking through the record, we find the names of both the complainant and defendants are written sometimes in the one mode and sometimes in the other, and it seems to us a clear case for the application of the principle of *idem sonans.* When spoken with ordinary rapidity of utterance, an unobservant ear would not mark the difference between them. A difference of sound there undoubtedly is, when the words are carefully enunciated, as there is in very many instances which courts regard as *idem sonans.* But it is to an ordinary and familiar utterance that the rule applies, and not to one carefully intended to discriminate the difference of sound. Moreover, the two names we understand to be really the same, one being the French form and the other the English. We believe the name to be properly French, and the prefix of Saint to have

been gradually corrupted into its present orthography, though even now the forms are sometimes used interchangeably, as they were in the record before us. The doctrine of *idem sonans* was applied in *Barnes* v. *The People*, 18 Ill. 52, to the names of Dugald and Dougal, and the difference of sound between them, when uttered in ordinary conversation, is certainly as great as between St. Clair and Sinclair.

It is next objected that the return of the sheriff, upon the summons, does not show the date of service, and, *non constat*, that the court had jurisdiction to pronounce a decree at the time it did so. The decree, however, recites that the defendants were duly served, and, on the authority of *Banks* v. *Banks*, 31 Ill. 162 ; *Reddick* v. *State Bank*, 27 id. 145, and *Timmerman* v. *Phelps*, 27 id. 496, this recital in the decree cures the defect in the return. Although the return was without date we must suppose the court was satisfied, in some legitimate mode, that the service was in season. It may, for example, have been shown to the court, by oral evidence, when the writ was served, or it may have appeared by the filing mark that it had been returned to the clerk more than ten days prior to the commencement of the term. In indulging in presumptions in support of the recital, by the court, it is to be observed that we presume nothing against the return of the sheriff, but consistently with it.

The plaintiffs, in further support of their objection to the record, and for the purpose of showing the defendants had never, in fact, been served, offered some testimony of a negative and unsatisfactory character, and then put upon the stand the sheriff in whose name the return was made, and offered to prove by him that the writ had never been served, and that a deputy had been bribed to make a false return. The court excluded this evidence, as well as that already received. This decision of the court is assigned for error.

Whether the recital, in a decree, of jurisdictional facts, can be contradicted in a collateral proceeding, is a question about which American courts have widely differed. In this court it can hardly be considered a settled question, as the case of

*Goudy* v. *Hall*, 30 Ill. 109, in which the merely *prima facie* character of such recitals is asserted, is not reconcilable with *Bimelar* v. *Dawson*, 4 Scam. 536, and *Welch* v. *Sykes*, 3 Gilm. 197. In *Goudy* v. *Hall*, however, the illustrations of the court are drawn from cases in which the recitals in the decree could be contradicted by other portions of the record, and a distinction may well be taken between cases of that character and one in which it is sought to impeach a judgment by parol evidence. The question, in the case at bar, is similar, but not quite the same. It is not sought to directly impeach the recitals of a decree, but to contradict the return of a sheriff. This question has been once before this court, in the case of *Owens* v. *Ranstead*, 22 Ill. 161, and parol evidence was then held admissible for that purpose. But that was not a case where the rights of third persons had intervened upon the faith of the record. It was a bill brought by the defendant in an execution against the plaintiff to enjoin its collection, upon the ground that the service and return were fraudulent and false, and that nothing was, in fact, due to the party who had obtained the judgment. None but the parties to the judgment could be affected by the impeachment of the sheriff's return, and we see no reason to doubt the correctness of that decision, though we are not disposed to extend it. But very different is the case at bar. It is now sought to divest the title of third persons acquired upon the faith of a judicial decree, pronounced upon the return of a summons showing personal service twelve years since, by parol evidence, that such return was false. The danger of permitting such a practice is forcibly illustrated in the very record before us. Francis, one of the witnesses who was sworn on the trial, and who had been an adult party defendant in the chancery suit, as to when the sheriff had returned a personal service, testified that he had never heard of said chancery suit until lately, and did not believe he had ever been served, and yet the record shows that he was examined, as a witness, before the master, in the chancery suit, and his testimony is fully reported. We have no reason to suppose he did not swear, on the trial of this cause, with per-

fect honesty of purpose, yet his testimony shows none the less strikingly the danger of balancing the imperfect memory of witnesses against the verity of a record.

The general current of American authority is undoubtedly in favor of holding the return conclusive as against the sheriff and the parties. It has been so adjudged in *Slayton* v. *Inhabitants of Chester*, 4 Mass. 478; *Dillen* v. *Roberts*, 13 S. & R. 60; *Stinson* v. *Snow*, 1 Fair. 263; *Lewis* v. *Blair*, 1 N. H. 68; *Zion's Church* v. *St. Peter's Church*, 5 Watts & S. 215; *Wheeler* v. *Lampman*, 14 J. R. 481; *Hunter* v. *Kirk*, 4 Hawks 277; *Rose* v. *Ford*, 2 Pike, 26, and in other cases. A different rule has been held in *Butts* v. *Francis*, 4 Conn. 424; *Watson* v. *Watson*, 6 id. 334. But in the last case the court speak of their rule as an admitted departure from the common law, and as peculiar to that State.

We entertain no doubt that the rule forbidding the return to be contradicted, as against third persons who have acquired rights under the judgment of the court, rests upon the sounder reason. The importance of the rule as a question of public policy upon which the principles of law are designed to rest, is most apparent. · The public should be permitted to purchase property sold under the judgment or decree of a court, without the apprehension that at some distant day their titles may be divested by parol testimony that the return of the officer, upon which such judgment was rendered was falsely made. The courts should hesitate long before offering such temptations to perjury as would be presented by opening the door to such evidence. It is unquestionably a great hardship that a person should lose his property in consequence of a judicial proceeding of which he had no notice. But all lawyers know, as a matter of fact, that such instances are of very rare occurrence. As an evidence of this, the present case is the first in the Illinois Reports in which this question has been raised, and even here we do not know what facts the evidence, if it had been received, would have disclosed. Sheriffs are restrained from making a false return, not only by their official oaths and duty, but by the fear of liability for themselves and their securities upon their official

bonds. If, nevertheless, they do make a false return, the injured party has his action. The remedy may not always be complete, but courts cannot always furnish a perfect remedy for wrong. Like individuals they have sometimes only a choice of evils, and we are satisfied there is less evil in the very few instances where property may be lost through a false return, in leaving the injured party to his action against the officer, than there would be in unsettling public faith in judicial records, destroying titles acquired under the sanctity of judicial proceedings, and offering a most dangerous temptation to perjury in our courts.

We are of the opinion that the Circuit Court decided properly in excluding the parol evidence, and the judgment is affirmed.

*Judgment affirmed.*