AMOS F. TOMPKINS *et al.*

*v.*

JOSEPH W. WILTBERGER.

1. PROCESS IN CHANCERY — *return of service thereof.* The return upon a summons in chancery set forth that the officer served the writ upon the defendant by leaving a copy at his place of abode, with a person named, " a member of his family, and a white person of the age of ten years and upward : " *Held,* the return was not sufficient to support a decree taken *pro confesso,* by reason of the omission to state that the officer informed the person with whom he left the copy, of the contents thereof.

2. NON-RESIDENT *defendants in chancery — publication of notice.* Where it was sought to give notice to non-resident defendants in chancery by publication, although the record failed to show that an affidavit of non-residence was filed in the court below, yet the clerk stated in the notice that an affidavit was filed, and the court found that publication was duly made as required by the statute, and this was sufficient.

3. DECREE — *decree of foreclosure should find the amount due.* A decree of foreclosure of a mortgage which simply orders the payment of the sum due on the debt secured by the mortgage, without finding the amount, is erroneous.

4. SAME — *where a part of the debt becomes due on the performance of a condition.* In a suit for a strict foreclosure, the decree directed that in order to prevent a strict foreclosure, the entire amount secured by the mortgage should be paid within a certain time, when a part of that sum did not be come payable until a certain condition was performed : *Held,* there being nothing in the proceedings to show the performance of the condition, the decree ordering the sum dependent thereon to be paid, was erroneous.

25 — 56TH ILL.

5. MORTGAGES — *subsequent purchasers from the mortgagor, of portions of the premises — of their rights on foreclosure.* A vendor of a tract of land took from the vendee a mortgage on the same premises to secure the purchase money. The vendee laid out the land in blocks and lots, and sold several of the lots to third persons. The mortgage debt becoming due and remaining unpaid, the mortgagee filed a bill for a strict foreclosure. On the objection that there ought not to be a foreclosure without sale and redemption, in view of the rights of those purchasers from the mortgagor, it was *held,* the correct rule governing such a foreclosure is laid down in *Iglehart* v. *Crane,* 42 Ill. 261, that is, first to sell such portion of the premises as is retained by the mortgagor, and then the remainder in the inverse order in which he had sold the lots to third parties.

6. PARTIAL REVERSAL — *and affirmance as to parties not joining in the writ of error.* Where a decree is a joint one, and error has intervened, the whole decree must be reversed, not only as to those who sue out the writ of error, but also as to such as do not join therein.

7. So upon bill to foreclose a mortgage against several defendants who held separate interests in the premises, a decree was so rendered that each defendant, in order to protect his separate interest, was required to pay the entire mortgage debt. Upon writ of error sued out by only a portion of the defendants below, it was *held,* there being error in the decree, it should be reversed as to all the defendants below, as well those who did not join in the writ of error, as those who did.

8. ERROR — *effect of letting in defendant in chancery to answer.* The fact that a defendant in chancery, against whom a decree *pro confesso* has been rendered, upon constructive notice, has been let in to answer, affords no reason why the appellate court should not proceed to hear errors assigned upon such decree. The decree is not vacated by permitting the party to come in and answer.

WRIT OF ERROR to the Superior Court of Chicago.

The opinion of the court contains a sufficient statement of the case.

Messrs. BONNEY, FAY & GRIGGS, for the plaintiffs in error.

Messrs. JONES & GARDNER, for the defendant in error. Mr. MELVILLE W, FULLER, for some of the subsequent purchasers.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by defendants in error, in the Superior Court of Chicago, against plaintiffs in error, for the strict foreclosure of a mortgage. The bill alleges that, on the 18th day of November, 1858, complainants were seized in fee of the west ½ of the north-east ¼ of section 15, and a part of the north-west ¼ of the same section, which is described by metes and bounds, all in township 38 north, range 14, east of the third principal meridian, and that they sold and conveyed these premises to one Jesse Embree, for the consideration of $94,550; that Embree paid $3,350 in cash, and executed nineteen notes, eighteen of which were for the sum of $2,400, payable, two in each year after date until 1867, when the last two matured. He also gave for the balance of the purchase money a note for $48,000, payable the 1st day of January, 1868. To secure the payment of these notes Embree executed a mortgage back to the vendors on the premises which he had thus purchased. The mortgage describes the notes, and states that they were given for the purchase money of the land, and provides that, if either of the notes should not be paid at maturity, the whole purchase money should thereby become due, and that, after publishing a notice for thirty days in a newspaper in Chicago, the mortgagee might sell the premises and the equity of redemption at auction to the highest bidder for cash, and as attorney of Embree might make a deed to the purchaser, and out of the proceeds retain the costs and the mortgage debt.

The bill further alleges that Embree represented that he could make better sales if an arrangement were made to release part of the premises on a *pro rata* payment of the mortgage, and that complainant agreed with West, Gerard, Rodebaugh and May Moody, who were first purchasers, that if they would pay their respective ratable shares of the mortgage, their portions of the premises should not be sacrificed to pay the original notes, or on present payment of such shares an imme-

diate release would be given to their several portions of the premises, but that these several persons had refused to carry out the arrangement, and had abandoned the premises purchased by them, and had allowed the same to be sold for taxes, and that the land could not be sold for more than half they agreed to pay therefor.

That one George W. Yerby, under some agreement with Embree, subdivided the premises into blocks and lots, and sold portions to various parties. That complainant had no knowledge of the arrangement or the contract with such purchasers, but alleges that the sale was subject to the mortgage, and, as far as he could learn, these purchases were abandoned.

That after Embree had failed to pay the notes and taxes, complainant, on the 9th of May, 1862, advertised the premises for sale under the mortgage, and on the tenth of the following June, the time specified in the notice, complainant offered the premises for sale to the highest bidder for cash, and Egbert W. Wiltberger bid the sum of $400 per acre, and, being the highest bidder, the property was sold to him, and complainant executed a deed therefor, but, through inadvertence, complainant executed the deed in his own name, instead of doing so as attorney in fact of Embree; that the parties claiming an interest in the premises did not pay the money to prevent the sale; that Egbert paid no money on the purchase, and the sale was without consideration, and on the 4th of September, 1862, Egbert reconveyed to complainant, who has also acquired the title of Charles L. and Joseph S. Wiltberger, to the premises; alleges that Embree is insolvent, and $80,000 was due on the notes; that no proceedings had been resorted to at law to recover the notes, and the premises were not worth more than $24,000. A large number of persons are made defendants, and a prayer for a strict foreclosure. ·

A summons was issued to the sheriff of Cook county, who returned that he had served the same by copy on Tompkins, and on Ashton, by leaving a copy with a member of his family, on the 4th of November, 1865, and the other defendants not found.

Notices of the pendency of the suit were published, and certificates thereof filed; and on the 4th of January, 1866, the bill was taken as confessed as to the non-residents. The *pro confesso* order recites proof of publication against all of the defendants but Tompkins and Ashton, and that they had been personally served; they not having answered under the rule of court, the bill was taken as confessed as to them at the June term, 1866. The court thereupon found that there was then "due, on the said notes over and above, the sum of $45,000, beside the $52,800 yet to mature, but which, as provided by the mortgage, has also become due and payable, making a total of some $97,800." The court found the property to be worth not more than $30,000; and it was ordered, that if the defendants, or either of them, should pay the sum due on the notes and mortgage, with interest and costs of suit, within thirty days, complainant should cancel the mortgage, but if they failed to make such payment, then the defendants stand absolutely barred and foreclosed of and from all equity of redemption in the mortgaged premises. The record is brought to this court on error, and various irregularities are urged as grounds of reversal.

It appears from the record that Tompkins was duly served with process, but, on an examination of the sheriff's return, it is found that the sheriff says he "also served Samuel Ashton by leaving a copy at his place of abode, with Mary Clohish, a member of his family, and a white person of the age of ten years and upwards, the 16th of November, 1865." It will be observed that this service on Ashton is not what the statute requires. It fails to state that the officer informed the person with whom the copy was left, of the contents thereof. It is a positive requirement of the law that the person shall be so informed, and in a direct proceeding such a service will not sustain a decree. The statute, for wise purposes, has made this requirement. Being designed to take the place of personal service, to avoid the danger that the defendant may not receive notice of the suit, the law has said, in addition to the other requirements,

the officer shall inform the person with whom the copy is left, of its contents. In the case of *Cost* v. *Rose*, 17 Ill. 276, a return was held insufficient to support a decree, because it failed to show that the copy was left with a " white person," a member " of the family," or that the person was informed " of the contents thereof." This is to the point, and must govern this case. In the case of *Boyland* v. *Boyland*, 18 Ill. 551, this court announced the rule that in making service by copy left at the abode of defendant, as in the case of constructive service by publication, the requirements of the statute must be strictly complied with, and this must affirmatively appear in the record. In that case the defect in the return was, that it failed to show the person with whom the copy was left was a member of defendant's family. And numerous other cases hold the return insufficient because they omit some one of the particulars required by the statute. And in the case of *Boyland* v. *Boyland, supra*, it was held, that such defects were not cured or aided by a recital of proper service in the decree. There was, therefore, no sufficient service on Ashton to warrant the rendition of the decree against him.

It is again urged, that there is not sufficient service by publication against the other defendants to sustain the decree. A careful examination of the record fails to show that there was filed in the court below an affidavit of non-residence of these defendants. But the clerk, in the notice, states an affidavit was filed, and the court finds that publication was duly made as required by the statute. This is sufficient, under the former decisions of this court. *Tibbs* v. *Allen*, 27 Ill. 119 ; *Millett* v. *Pease*, 31 id. 377.

The decree is vague and rather indefinite in finding the amount of money due on the mortgage debt. But we infer it finds $97,800 to have been due at the date of the decree. If it but ordered that the sum due on the debt should be paid, without finding the amount, the decree would be erroneous. We cannot say that a specific sum has been found, and the decree only directs the payment of the sum due on the notes

and mortgage. If that be the finding of the court, it was erroneous, as the amount of the unconditional notes was not half of that sum; and there is no allegation in the bill that the Wiltbergers, who were minors, and owned a part of the land, had conveyed, or offered to convey, their interest in the land to Embree, as the condition of the $48,000 note required they should before it was payable. Until they convey to Embree, or to some person, so the title should inure to his benefit, complainant could not insist upon the payment of that note, and to authorize the court to decree its payment, it should have appeared that the condition had been complied with; this does not appear either from the allegations of the bill, which were taken as confessed, or from proof in the record.

Nor is the decree aided by the allegation in the bill, that the Wiltbergers, who were to convey to Embree before that note fell due, had conveyed to complainant, as he does not pretend that he had conveyed, or offered to convey, to Embree. The decree was therefore unauthorized by the allegations of the bill, in finding that the $48,000 note was due, and in requiring its payment to prevent a strict foreclosure.

It is also urged that the court below erred in decreeing a foreclosure without sale and redemption, in view of the fact, that it appears that other parties had acquired rights or interests in the property by purchase from Embree. By their purchase they unquestionably acquired rights in the property, a right of redemption, if not a right to discharge their proportionate share of the mortgage and have the portion released from the mortgage. It would have been but equitable to have sold the premises by lots, as it had been subdivided, — selling first any portion which might have been retained by Embree, and then the remainder in the inverse order in which he had sold the lots to the other defendants. In the case of *Iglehart* v. *Crane*, 42 Ill. 261, the rule governing such a foreclosure is fully discussed and clearly stated. The rule there announced is applicable to the facts of this case, and should govern a foreclosure of this mortgage so far as relates to a sale of these premises to satisfy the mortgage debt.

It is urged that the decree, in any event, should only be reversed as to the plaintiffs in error, leaving it in full force against those defendants who have not joined in suing out the writ. In this case the decree is a joint one, and in such cases, if error has intervened, the whole decree will be reversed. *Montgomery* v. *Brown*, 2 Gilm. 581. The decree was so rendered that each defendant, to protect his rights, was required to pay all of the money due on the notes and mortgage. Had it ascertained the extent of each defendant's purchase from the mortgagor, and the *pro rata* amount each should pay to relieve the land he had purchased, and given him the right to redeem, or be foreclosed, then, had the decree been regular, except as to plaintiffs in error, it might have been reversed as to them and affirmed as to those not joining in the writ of error. But this entire decree is erroneous and must be reversed *in toto.*

It is suggested that the heirs of one of the defendants, and a defendant, have been let in to answer the bill, and for that reason there is no ground for reversing the decree. On the decree being opened to permit them to answer, the court below has not vacated the decree, but it stands unaffected until a hearing shall be had on the answers thus filed. If they should fail in their defense the decree would be unaffected. And even if they succeeded, it might only result in a modification so far as it related to their interest in the premises. We perceive no reason for refusing to consider the errors assigned on the record, and hence give the case the same consideration as though these parties had not been let in to answer.

We regard the allegations of the bill as being vague and not of that clear and concise character that the rules of equity pleading require, but we shall not consume the time necessary to consider them in detail to ascertain whether they are sufficient to sustain a decree on a *pro confesso* order. As the case must be remanded, the question as to the sufficiency of the bill can be raised on demurrer, or the complainant, if he desires, can have leave to amend. The decree of the court below is reversed and the cause remanded.     *Decree reversed.*