(No. 62438.— )

STATE BANK OF LAKE ZURICH *et al.* v. CHARLES J. THILL, JR., *et al.* (First National Bank of Des Plaines *et al.*, Appellants; Charles J. Thill, Jr., Appellee).

*Opinion filed September 17, 1986.*

296

298

Stanley M. Cahn and Susan E. Woods, of Chicago, for appellant First National Bank of Des Plaines *et al.*

Madsen, Clark, Baudin & Briscoe, of Crystal Lake (W. Randall Baudin, of counsel), for appellee Charles J. Thill, Jr.

JUSTICE RYAN delivered the opinion of the court:

The plaintiff, the State Bank of Lake Zurich, filed a complaint in the circuit court of Lake County to foreclose a mortgage on certain real property. The complaint named Charles J. Thill, Jr., Nancy J. Thill, his wife, and "unknown owners" as defendants. The circuit court, after finding that each defendant had been duly and properly brought before the court, either by personal service of summons, service by publication, or voluntary appearance, entered a judgment of foreclosure and ordered the sale of the property. The plaintiff purchased the property at a sheriff's sale. Title to the property was thereafter conveyed to the First National Bank of Des Plaines in a land trust. The First National Bank of Des Plaines, as land trustee, conveyed title to Edwin T. Magoon, and Gail M. Magoon, his wife. More than a year after the foreclosure judgment, Charles J. Thill, Jr., after entering a special and limited appearance, filed a motion to vacate the judgment of foreclosure and sale, alleging that the circuit court lacked personal jurisdiction to enter the judgment against him, as he purportedly was not served with process in the foreclosure suit. The First National Bank of Des Plaines, as trustee, Robert Christian, and Edwin and Gail Magoon, who claimed title or interest in the subject property pursuant to the judgment in the prior suit to foreclose the mortgage, were granted leave by the circuit court to intervene. The intervenors sought judgment on the pleadings which, as will be discussed later, was granted by the circuit court without an eviden-

tiary hearing. The appellate court reversed the order of the circuit court (135 Ill. App. 3d 747) and remanded for an evidentiary hearing to resolve the factual dispute of whether proper service of process was obtained upon Charles J. Thill, Jr. We allowed the intervenors' petition for leave to appeal (94 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

In April of 1976, Charles and Nancy Thill purchased a single-family residence at 170 Pebble Creek Drive in Lake Zurich. The Thills financed the purchase of their home, in part, by executing a promissory note in the principal amount of $39,950 to the plaintiff, secured by a mortgage on the subject property. On May 24, 1982, the plaintiff, after determining that the Thills had failed to make monthly payments of principal and interest due in January, February, March, April, and May of 1982, commenced suit to foreclose the mortgage.

On motion of the plaintiff's attorney, the circuit court authorized Walter S. Chambers, Lawrence Steussy, Steven J. Phillips and Michael Szydelko to serve process in this cause. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—202(a).) Summons was placed with Steven J. Phillips for service on Charles and Nancy Thill. Phillips, in turn, delivered the documents to Michael Szydelko, who executed an affidavit of service which recited:

[The underlining indicates blanks in the printed form.]
"State of Illinois )
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) SS
County of Lake )

I, Michael Syzdelko, being first duly sworn on oath, depose and say that service of Complaint for Foreclosure Mortgage, original of which is presently on file with the Clerk of the Circuit Court of Lake County, Illinois, was made on Charles J. Thill & Nancy J., the 11 day of June, 1982, at approximately 5:30 o'clock P.M., in the following manner:

(A) By handing a copy thereof to the within named _____, who is a _____ (sex), _____ (race), of the approximate age of _____, being at the address of _____.

(B) By leaving a copy of the above-described document with **Nancy J. Thill,** at the usual place of abode of the said Respondent at the following address: **170 Pebble Creek, Lake Zurich, IL.,** with a person of Respondent's family of the age of 13 years or above, who is a **female** (sex), **white** (race), of the approximate age of **35,** and informing such person of the contents thereof, and also by sending through the United States Mail, by depositing in the United States Post Office at _____, on the _____ day of _____, 19___, a copy thereof in a sealed envelope, with postage fully prepaid, addressed to said Respondent at such usual place of abode.

(C) I have duly served the above-described document upon the within named _____, by reading and by delivering a true copy thereof to _____, whose Title is _____, who is a _____ (sex), _____ (race), of the approximate age of _____, being at the address of _____.

(D) By posting a copy of the above-described document on the premises, no person being in actual possession thereof.

Michael Szydelko (Affiant)
Subscribed and sworn to before me
this 14th day of June, 1982.
Paul Hammer (Notary Public)"

On July 13, 1982, Nancy Thill filed a *pro se* appearance and answer to the complaint for foreclosure. The answer recited that she tendered the plaintiff a cashier's check for four of the five months in arrears; that the plaintiff refused to accept the check because of the foreclosure proceedings; and that Nancy Thill realized she

was behind in mortgage payments but believed she could pay off the indebtedness within 30 to 40 days. No further appearance, answer, or pleading was filed by either of the Thills prior to the entry of judgment of foreclosure and sale.

On September 13, 1982, the plaintiff, after giving notice by mail to Nancy Thill, moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005) and Supreme Court Rule 191 (87 Ill. 2d R. 191). The circuit court entered a judgment of foreclosure after finding that Charles J. Thill, Jr., failed to appear or plead to the complaint; that Nancy J. Thill appeared and filed a responsive pleading; that both Charles and Nancy Thill were personally served with process on June 11, 1982; that all "unknown owners" were duly served by publication; that the court had jurisdiction of the subject matter and of the parties; and that the total indebtedness due to the plaintiff was $42,518.24. The judgment ordered the sheriff of Lake County to sell the subject premises at a public auction. The judgment then gave the defendants, and all those claiming under them, six months after the date of the sale to redeem the premises, barring any attempt to exercise that right thereafter. In the event the premises remained unredeemed, the judgment directed the sheriff to execute and to deliver a deed of conveyance of the premises to the holder of the certificate of sale.

Pursuant to the judgment, a sheriff's sale was held on October 18, 1983, at which the plaintiff purchased the subject property for $42,518.24, leaving no deficiency. The sheriff filed his report of the sale and distribution. The circuit court then entered an order approving, ratifying, and confirming the sheriff's report. No redemption having been made within the time prescribed in the foreclosure judgment, the sheriff executed a sheriff's

deed to the plaintiff.

On October 31, 1983, Charles Thill, Jr. (hereinafter the defendant), was granted leave to file a special and limited appearance to contest the jurisdiction of the court. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—301.) The special and limited appearance was accompanied by a motion to vacate the summary judgment order, the judgment of foreclosure and sale against him, and the order confirming and ratifying the sheriff's sale. The motion alleged that Charles Thill, Jr., was never properly served with summons, either personally or by substituted service. Therefore, defendant alleged, because the court lacked personal jurisdiction over him, the judgment of foreclosure and sale was void with respect to him.

The affidavits of Charles and Nancy Thill were attached in support of the motion to vacate. In his affidavit, Charles J. Thill, Jr., asserted that he was never served with a summons or a complaint either personally or by mail; that he had no knowledge of the foreclosure proceedings until October 20, 1983, when he received a telephone call from Robert Christian, who told him that he "hated to have or cause [Mr. Thill and his family] to be evicted" from their Lake Zurich residence; that since their marriage his wife has handled exclusively all marital-related and family-related payments, including mortgage and tax matters; that he was never advised by his wife, or any other person, of a mortgage arrearage; and that he had sufficient funds for payment if he had known. In her affidavit, Nancy Thill reiterated that she was responsible for the management of all family financial matters, including mortgage, real estate tax, and insurance payments; that on June 11, 1982, a man came to the Thill residence and handed her several sheets of paper, without explaining their content or informing her that any of the documents were for her husband; that no

summons or complaint came to their home by mail; and that she never informed her husband of the mortgage arrearage, the complaint for foreclosure, or her *pro se* appearance in the foreclosure action.

The plaintiff responded to the defendant's motion to vacate the judgment, asserting that it had relied on the judgment in the foreclosure action, which contained jurisdictional findings that all of the defendants, including Charles J. Thill, Jr., had been duly and properly served and that the court had both jurisdiction of the parties and of the subject matter of the cause. The plaintiff also acknowledged that the affidavit of service indicated an attempt to serve Charles J. Thill, Jr., by leaving a copy of the summons with Nancy Thill. Although the affidavit of service was incomplete on the matter of substituted service, the plaintiff claimed that copies of the summons and complaint were mailed to the defendant. In support of its position, the plaintiff attached the affidavits of Michael Szydelko, Steven J. Phillips, and Ronald Spiekhout.

Steven J. Phillips asserted in his affidavit that he was appointed as a special process server in this litigation; that he received a copy of the summons and of the complaint from the attorney for the plaintiff, for service upon Nancy and Charles Thill; that he delivered the documents to Michael Szydelko, who also was appointed as a special process server in this cause; that he received the affidavit of service executed by Szydelko which purportedly indicated personal service on Nancy Thill and substituted service on Charles J. Thill, Jr.; that he delivered the affidavit to the attorney and received from him an additional copy of the complaint and of the summons; that he then mailed, with proper postage, the additional copy of the summons and of the complaint to Charles J. Thill, Jr., at his Lake Zurich address on June 14, 1982; and that he neglected to complete the affidavit of service

showing the mailing.

Michael Szydelko's affidavit alleged that he delivered a summons and a complaint to Nancy Thill on June 11, 1982, at her home in Lake Zurich; that he read the caption and the title of the complaint to her; that he informed her that these documents were for her and her husband; that he delivered to Phillips the executed affidavit of service purportedly indicating personal service on Nancy Thill and substituted service on Charles J. Thill, Jr.; and that he did not complete the mailing section of the affidavit because he did not have an extra copy of the summons or the complaint to mail to Charles J. Thill, Jr.

The affidavit of Ronald Spiekhout stated that he sent a letter addressed to Charles and Nancy Thill by certified mail, return receipt requested, reminding them that foreclosure proceedings had begun in 1982 on the subject real estate and that the period of redemption expired May 19, 1983. The affidavit further stated that Spiekhout was unaware of any defect in service of process upon Charles J. Thill, Jr.

The First National Bank of Des Plaines, as trustee, Robert Christian, Edwin T. Magoon, and Gail M. Magoon, were, as previously noted, given leave to intervene. Their response to the motion to vacate the judgment alleged that Nancy Thill entered into a written contract with the plaintiff, the purchaser at the foreclosure sale, to repurchase the subject property for $60,000; that Nancy Thill also entered into a real estate sales contract with Robert Christian to sell the property for $65,000; that Nancy Thill by letter directed the plaintiff to convey the property, by warranty deed, to the First National Bank of Des Plaines in a trust of which Robert Christian was sole beneficiary; and that the subject property was thereafter conveyed by trustee's deed to Edwin and Gail Magoon.

In a written order entered December 29, 1983, the circuit court found that the defendant's motion to vacate was a collateral attack on the judgment of foreclosure and sale; that the intervenors, none of whom were parties to the original foreclosure action, purchased the subject property subsequent to the entry of the judgment of foreclosure and sale and prior to the filing of the motion to vacate; and that the findings of the judgment of foreclosure and sale that the court had jurisdiction of the parties were determinative of that issue. Relying on section 2—1401(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401(e)), which protects the rights of innocent third-party purchasers, not parties to the original action, who purchased the property in reliance upon a court decree unless a lack of jurisdiction affirmatively appears from the record, the circuit court concluded that the intervenors' title to the subject property could not be disturbed because the alleged jurisdictional defect in this cause was not apparent from the face of the record.

The appellate court reversed the order of the circuit court, finding that at the time the judgment of foreclosure and sale was entered the affidavit of service was insufficient to confer personal jurisdiction over Charles J. Thill, Jr. Thus, the denial of the motion to vacate could not be properly premised upon the erroneous jurisdictional findings in the judgment. (135 Ill. App. 3d 747, 758.) Citing *Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166, 171-75, *In re Jafree* (1982), 93 Ill. 2d 450, 454-55, and *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 480-81, the appellate court concluded that where a defendant claims he was not served with process and the return by the sheriff or other process server so stating is incomplete, the circuit court must consider both the affidavits and testimony, together with the disputed return, to resolve the factual dispute of whether proper service

of process was obtained. (135 Ill. App. 3d 747, 757.) The appellate court noted, however, that the circuit court had declined to permit the defendant to offer evidence relating to the purported substituted service on him in opposition to the supplemental affidavits relating to service and that the circuit court refused to permit the defendant to make an offer of proof as to the proposed testimony. (135 Ill. App. 3d 747, 757.) The appellate court therefore remanded the cause to the circuit court to allow the defendant to present contrary evidence as to the validity of the purported substituted service of summons on him. (135 Ill. App. 3d 747, 757-58.) We granted the intervenors leave to appeal pursuant to our Rule 315 (87 Ill. 2d R. 315).

The basis for the defendant's collateral attack upon the underlying judgment of foreclosure and sale is that the circuit court lacked personal jurisdiction to enter the judgment against him, and that this lack of jurisdiction was apparent from the record. The defendant argues that because of the deficiencies in the affidavit of service, no jurisdiction had been obtained over his person and the judgment of foreclosure and sale was therefore void as to him. That is, no presumption of validity attached to the recital of jurisdiction in the foreclosure judgment because of the defect in the affidavit of service.

It is the intervenors' position that the judgment of foreclosure and sale is not subject to collateral attack. They contend that where, as here, the rights of innocent third-party purchasers have attached, a judgment cannot be collaterally attacked, even for alleged jurisdictional defects, unless those defects appear in the record. They argue that the failure to·properly execute the affidavit showing substituted personal service was not a defect affirmatively appearing in the record, but only an omission which was cured by the jurisdictional recital in the judg-

ment. It is also the intervenors' position that where, as here, the rights of innocent third-party purchasers have attached, there is a presumption that the circuit court based its jurisdictional findings, upon which the third parties relied, on sufficient evidence even if not contained in the record. They contend that this presumption is conclusive upon collateral attack unless it is irreconcilable with the facts disclosed in the record.

It is essential to the validity of a judgment that the court have both jurisdiction of the subject matter of the litigation and jurisdiction over the parties. (*Lady v. Montgomery Ward & Co.* (1980), 80 Ill. App. 3d 69, 72; *Federal Sign & Signal Corp. v. Czubak* (1978), 57 Ill. App. 3d 176, 179.) Absent a general appearance, personal jurisdiction can be acquired only by service of process in the manner directed by statute. (*In re Marriage of Hostetler* (1984), 124 Ill. App. 3d 31, 33; *Mercantile All-In-One Loans, Inc. v. Menna* (1978), 63 Ill. App. 3d 931, 937; *Gocheff v. Breeding* (1977), 53 Ill. App. 3d 608, 609-10.) The Code of Civil Procedure authorizes the service of process either by summons (Ill. Rev. Stat. 1981, ch. 110, pars. 2—203, 2—204, 2—205) or by publication and mailing (Ill. Rev. Stat. 1981, ch. 110, par. 2—206). A judgment rendered without service of process, either by summons or by publication and mailing, where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings. (*Stankowicz v. Gonzalez* (1981), 103 Ill. App. 3d 828, 831; *First Federal Savings & Loan Association v. Brown* (1979), 74 Ill. App. 3d 901, 905.) Moreover, a party attacking a judgment for lack of personal jurisdiction due to defective service of process is not restricted by either the time limitations or the "due diligence" requirements of section 2—1401 of the Code of Civil Procedure. (*In re Marriage of Parks* (1984), 122 Ill. App. 3d

905, 909; *Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 917; Ill. Rev. Stat. 1981, ch. 110, par. 2—1401(f).) Accordingly, a judgment rendered by a court which fails to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally. *R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309; *Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 112.

Section 2—203 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—203) governs the mode of service of summons upon an individual defendant. That section provides in pertinent part:

"(a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made (a) by leaving a copy thereof with the defendant personally or (b) *by leaving a copy at the defendant's usual place of abode, with some person of the family, of the age of 13 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode.* The certificate of the officer or affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 2—203(a).)

Illinois case law has long acknowledged that the return of the officer or other authorized person making service of a summons on a defendant by delivering a copy to another person, that is, by substituted service, must show strict compliance with every requirement of the statute authorizing such substituted service, since the same presumption of validity that attaches to a return reciting personal service does not apply to substituted service. (See, *e.g., Werner v. W. H. Shons Co.* (1930), 341 Ill. 478, 482-83; *Tompkins v. Wiltberger* (1870), 56 Ill. 385,

390; *Miller v. Mills* (1862), 29 Ill. 431, 433; *Boyland v. Boyland* (1857), 18 Ill. 551, 553; *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1139; *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 555; *Chiaro v. Lemberis* (1960), 28 Ill. App. 2d 164, 171; *Tomaszewski v. George* (1953), 1 Ill. App. 2d 22, 27.) Therefore, where personal jurisdiction is based upon substituted service of a summons, *the return or affidavit of service must affirmatively state* (1) that a copy of the summons was left at the usual place of abode of the defendant with some person of the family of the age of 13 years or upwards, (2) that such family member was informed of the contents of the summons, and (3) that the officer or other authorized person making service sent a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode.

The above-cited authorities firmly establish that the failure to recite any of these particulars required by statute renders the return defective. Moreover, these defects cannot be aided by recitals of valid service in the judgment or decree. Thus, in *Miller v. Mills* (1862), 29 Ill. 431, 433, the return was insufficient to warrant a decree by default because the return failed to show that a true copy of the summons was left at the usual place of abode of the defendant. Similarly, in *Tompkins v. Wiltberger* (1870), 56 Ill. 385, 390, the return was insufficient to support a decree because the return failed to show that the officer serving the summons explained the contents of the writ to the person with whom he left it. Likewise, the service was wholly insufficient to give the court jurisdiction of the person of the defendant in *Boyland v. Boyland* (1857), 18 Ill. 551, 553, because the return failed to show that a true copy of the writ was left at the usual place of abode of the defendant or that the person with whom the copy was left was a member of the defendant's family.

Here, as in *Tompkins, Miller,* and *Boyland,* the return appearing in the record fails to comply with the statutory requirements and is defective in several essentials. First, the affidavit of service does not show that any summons was served, noting only service of a complaint. Second, the affidavit fails to show that an additional copy of the summons was left with Nancy Thill for the defendant. Finally, and most importantly, the affidavit is defective because it does not affirmatively recite that a copy of the summons was subsequently mailed in a sealed envelope with postage fully prepaid to the defendant at the Pebble Creek Drive address. Accordingly, we must hold that these defects appearing on the face of the affidavit of service rendered the return defective.

Having determined that the affidavit of service is defective on its face and thus insufficient to give the circuit court jurisdiction over the defendant, the question remains whether the appellate court erred in allowing the affidavit of service to be supplemented by evidence to show that which was actually done in effecting service of process on the defendant. The plaintiff, in response to the defendant's motion to vacate the judgment of foreclosure and sale as to him, offered the supplemental affidavits referred to above of the persons who had been appointed to serve process in this cause. These affidavits sought to correct the above deficiencies in the original affidavit of service by stating that a copy of the summons and of the complaint were, in fact, delivered to Nancy Thill on June 11, 1982; that she was informed the documents were for her and the defendant; and that substituted service was completed on the defendant by mailing a copy of the summons to him at his Pebble Creek Drive address.

Supreme Court Rule 102 requires an officer or other authorized person making service of summons to make a

return by filing proof of service within certain specified times. (87 Ill. 2d R. 102(d).) The rule also provides that "[f]ailure of the officer or other person to return the summons or file proof of service does not invalidate the summons or the service thereof, if had." (87 Ill. 2d R. 102(d).) It follows logically, then, that if a return or proof of service is filed which fails to fully comply with the statute, such a defective return or proof of service should not invalidate the summons or the service thereof, if had. Moreover, section 2—203(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110 par. 2— 203(a)) provides that "[t]he certificate of the officer or affidavit of the person that he or she has sent the copy [of the summons] in pursuance of this Section is *evidence* that he or she has done so." (Emphasis added.) In *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 480-81, this court held that the affidavit of service is *evidence* which may be overcome only by a contradictory affidavit or personal testimony. (See also *Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166, 172.) Thus, the defendants' challenge to the service in the present case and the filing of the affidavits of the process servers in response to this challenge created an issue of fact as to the service which should have been resolved by the circuit court. Because the circuit court erred in declining to permit the defendant to offer evidence relating to the purported substituted service upon him, although the defendant had subpoenaed witnesses for the hearing, as well as refusing to permit the defendant to make an offer of proof as to the proposed testimony, the appellate court properly remanded the cause to the circuit court for an evidentiary hearing on the validity of the purported substituted service of summons on the defendant.

The intervenors maintain, however, that where, as here, the rights of innocent third-party purchasers have attached, a judgment cannot be collaterally attacked,

even for an alleged jurisdictional defect, unless such defect affirmatively appears in the record. (*Janove v. Bacon* (1955), 6 Ill. 2d 245, 249; *Greenwald v. McCarthy* (1948), 402 Ill. 135, 137-40; *Rivard v. Gardner* (1866), 39 Ill. 125, 128-30; *Uptown Federal Savings & Loan Association v. Vasavid* (1981), 94 Ill. App. 3d 531, 534-35; *Longstreet v. Morey* (1977), 49 Ill. App. 3d 720, 723; *Uptown Federal Savings & Loan Association v. Walsh* (1973), 15 Ill. App. 3d 626, 631.) As noted earlier in this opinion, the circuit court relied on section 2—1041(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401(e)) in upholding the intervenors' claim. That section provides:

"Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment."

In determining whether a lack of jurisdiction is apparent from the record, we must look to the whole record, which includes the pleadings, the return on the process, the verdict of the jury, and the judgment or decree of the court. (*Ward v. Sampson* (1946), 395 Ill. 353, 359; *Cullen v. Stevens* (1944), 389 Ill. 35, 42; *Sharp v. Sharp* (1928), 333 Ill. 267, 274-75; *Anderson v. Anderson* (1955), 4 Ill. App. 2d 330, 344.) The judgment in our cause, insofar as it affects this question, specifically recites that "each of the defendants in this cause has been duly and properly brought before the court, either through service of process of summons, by appearance,

or by service by publication, all in the manner as provided by law; and this court now has jurisdiction over all the parties to this cause and the subject matter hereof." Here, however, personal jurisdiction is based upon substituted service of summons. The authorities previously cited hold that the return or affidavit of service in such cases must show strict compliance with the requirements of the statute authorizing substituted service of a summons. The affidavit of service, as previously noted, fails to state that Michael Szydelko left a copy of the summons with Nancy Thill for the defendant or that he mailed a copy of the summons "in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." (Ill. Rev. Stat. 1981, ch. 110, par. 2—203(a).) Unlike the situations in *Greenwald, Vasavid,* and *Walsh* cited by intervenors, the alleged jurisdictional defect in this case does not require inquiry beyond the face of the record. Because the record affirmatively shows that service on the defendant was not had in the manner provided by statute, the intervenors, notwithstanding their purported status as innocent third-party purchasers, cannot rely on the jurisdictional recital in the foreclosure judgment to prevent a collateral attack on that judgment.

Citing *Rivard v. Gardner* (1866), 39 Ill. 125, the intervenors contend that a jurisdictional defect did not affirmatively appear in the record in this case, since the defects in the return of process were "cured" by the jurisdictional findings in the underlying foreclosure judgment. In *Rivard,* the plaintiffs brought an action of ejectment against the defendants. The plaintiffs offered proof that their father had conveyed them the subject property. The defendants, however, presented evidence that the plaintiffs' deed had been invalidated in a suit the plaintiffs' father had brought against them 12 years earlier, and that the defendants had subsequently ac-

quired title to the property. The plaintiffs argued that the return of the summons showing personal service in their prior action failed to recite the date of service and was, in fact, a false return. While the return was without date, the decree recited that the defendants were duly served. In concluding that the recital in the decree cured the defect in the return, this court reasoned:

"Although the return was without date, *we must suppose the court was satisfied[,] in some legitimate mode, that the service was in season.* It may, for example, have been shown to the court, by oral evidence, when the writ was served, or it may have appeared by the filing mark that it had been returned to the clerk more than ten days prior to the commencement of the term. In indulging in presumptions in support of the recital, by the court, it is to be observed that we presume nothing against the return of the sheriff, but consistently with it." (Emphasis added.) (39 Ill. 125, 128.)

In support of their contention that there had never, in fact, been service in the prior case, the plaintiffs offered testimony from the sheriff that his deputy had been bribed to file a false return.

*Rivard* does not hold that the failure of a return to show service of process is "cured" by a recital in the judgment stating the court had jurisdiction over the parties. This court in *Rivard* was primarily concerned with the dangers of permitting title to property sold under a judgment or decree to be divested at a subsequent collateral proceeding by parol testimony that the return of the officer, upon which such judgment was rendered, was falsely made. (*Rivard v. Gardner* (1866), 39 Ill. 125, 128-29.) Moreover, *Rivard* involved personal service and not substituted service, and the defect that was cured in that case was simply supplying a missing date. The defects we have noted in the substituted service in the present case, however, constitute a failure to comply with the

statutory provisions provided for acquiring jurisdiction over a defendant. Further, in *Rivard,* the failure to endorse the date of service on the return did not constitute a vital omission. In fact, our Rule 102 (87 Ill. 2d R. 102(c)) specifically provides that such a failure does not affect the validity of service. In sum, the defect in the present case is not the mere failure to insert the date of service. The defect is that the return does not reflect that service was in fact had on Charles J. Thill, Jr.

The intervenors next argue that the presumption of validity of the jurisdictional findings in a judgment is conclusive upon collateral attack unless it is *irreconcilable* with the facts disclosed in the record. (See *Greenwald v. McCarthy* (1948), 402 Ill. 135, 140, 142; *Kuzak v. Anderson* (1915), 267 Ill. 609, 613-14; *Bradley v. Drone* (1900), 187 Ill. 175, 180; *Figge v. Rowlen* (1900), 185 Ill. 234, 239; *Reedy v. Camfield* (1896), 159 Ill. 254, 260-61; *Swift v. Yanaway* (1894), 153 Ill. 197, 202; *People ex rel. Commissioners of North Fork Outlet Drainage District v. Schwartz* (1927), 244 Ill. App. 137, 144; A. Freeman, Judgments secs. 379, 381, 383 (5th ed. 1925).) The intervenors take the position that because the original affidavit of service is merely *silent* or *incomplete* as to whether every requirement of the statute authorizing substituted service of summons had been complied with, the record is not *irreconcilable* with the jurisdictional findings in the judgment.

The authorities cited by the intervenors are inapposite and deal essentially with the law involved with service by publication. For the reasons which have been given, the return of the summons in this case was insufficient to give the circuit court jurisdiction over the person of the defendant. As noted above, the judgment found, as a matter of fact, that the defendant was personally served with process and that the circuit court had jurisdiction over all the parties to this cause. The re-

turn, which is a part of the record, *contradicts* the jurisdictional findings of the circuit court in that it does not show that substituted service was had on the defendant. Because a court does not acquire jurisdiction by a mere recital contrary to what is shown in the record, the intervenors' argument, that jurisdictional findings in a collateral proceeding must be regarded as conclusive and binding upon all parties to the record, is therefore without merit.

The intervenors also argue that the legislative scheme for mortgage-foreclosure sales seeks to protect the rights of innocent third persons and to give permanency and stability to such judicial sales of real estate. The result reached today is not intended to impair the merchantability of titles passing under a court order, decree, or judgment. We recognize fully the importance of assuring that a *bona fide* purchaser of real estate may rely on the facial validity of judicial proceedings which form a link in his chain of title. However, a purchaser is not entitled to rely on a judicial proceeding the record of which evinces a lack of jurisdiction. As such, we find no merit in the intervenors' suggestion that our decision will deter a third party from becoming a purchaser at a judicial sale of real estate as well as impair the marketable value of titles derived from such sale.

For the reasons set forth, the appellate court reversal of the December 29, 1982, order of the circuit court is affirmed and the cause is remanded to the circuit court of Lake County with directions to conduct an evidentiary hearing on the validity of the purported substituted service of summons on the defendant.

*Affirmed and remanded,*
*with directions.*