(No. 57676.—

NIBCO, INC., Appellant, v. PATRICIA A. JOHNSON, Appellee.—PATRICIA A. JOHNSON, Appellee, v. FLOYD O. McCULLER *et al.*, Appellants.

*Opinion filed October 21, 1983.*

SIMON and GOLDENHERSH, JJ., dissenting.

Baker & McKenzie, of Chicago (Francis D. Morrissey, George Lopuszynski, and Paul B. O'Flaherty, Jr., of counsel), for appellants Floyd O. McCuller and Nibco, Inc.

John M. Cutrone, of Chicago, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

These consolidated cases arose out of a motor vehicle collision. In March of 1977 Nibco v. Johnson was filed in the circuit court of Cook County seeking to recover for damage to Nibco's truck. In June of 1977, Johnson v. Nibco was filed by Patricia Johnson to recover for personal injuries. The sole issue presented for our review is whether or not the substitute service of summons in Nibco v. Johnson was valid.

A default judgment based on substitute service of summons was entered against Patricia Johnson in Nibco v. Johnson in April 1978. Based on this judgment, Nibco moved for a summary judgment in the personal injury suit, Johnson v. Nibco. Patricia Johnson then moved to quash service of summons in Nibco v. Johnson. The trial judge treated her motion to quash as a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, sec. 72), now a petition under section 2—1401 of

the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401), and denied it. Nibco's motion for summary judgment in Johnson v. Nibco was granted.

Patricia Johnson filed a notice of appeal in connection with both of these matters. The appellate court, in a Rule 23 order (87 Ill. 2d R. 23), reversed the decision of the circuit court, ordered service quashed, ordered the default judgment against Johnson vacated in Nibco v. Johnson, and ordered the summary judgment entered against Johnson in Johnson v. Nibco vacated. (109 Ill. App. 3d 1209.) We granted Nibco's petition for leave to appeal.

Section 13.2(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 13.2(1)), which is now section 2—203(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—203(a)), provides for substitute service of summons on individuals "by leaving a copy at his usual place of abode, with some person of the family, of the age of 13 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode. The certificate of the officer or affidavit of the person that he has sent the copy in pursuance of this Section is evidence that he has done so." The sheriff's return of service reflects that Deputy Arthur Nawls effected service upon defendant Patricia Johnson by delivery of a copy of the writ to a person of her family over the age of 13 years named Moh Joe Johnson and that Deputy Nawls mailed a copy of the writ, postage paid, to defendant at her abode.

Patricia Johnson filed a motion to quash service of summons, supported by her affidavit stating that no Joe Johnson or other male lived with her on the date of the alleged service, and that she had no knowledge of the

suit entitled "Nibco v. Johnson" prior to December 10, 1980, or of the judgment entered against her.

Deputy Nawls testified at the hearing on the motion to quash service, stating that his daily report sheet indicated he had attempted to effect service on Patricia Johnson and had in fact served Joe Johnson, who identified himself as a member of defendant's household. Nawls also explained that Moh before the name Joe Johnson on the return stands for member of household. During cross-examination, Nawls testified that he assumed Joe Johnson was living at the service address and was a member of the household. However, on redirect examination, Nawls stated that Joe Johnson had admitted knowing Patricia Johnson. It is not questioned that the service on Joe Johnson took place at Patricia Johnson's usual place of abode.

Patricia Johnson did not testify and offered no evidence in support of her motion other than the affidavit she had filed. The trial judge held for Nibco and denied Patricia Johnson's motion. The trial judge found that based upon Nawls' testimony, Joe Johnson had identified himself as a member of the household and that the deputy's testimony was "in effect a counteraffidavit." The judge went on to state: "We now have a situation of credibility. One [Patricia Johnson] is just making this self-serving statement that he is not a member of the household; and the other [Deputy Nawls] is saying that he was informed that he was a member of the household by the individual himself." As to Deputy Nawls' statement on cross-examination that he had assumed Joe Johnson lived at the abode of Patricia Johnson, the court had this to say:

"THE COURT: Well, I think that context in which the cross-examination takes place is not inconsistent with the statement that the individual was a member of the household.

It says, 'Do you know whether or not he was living

there?' And he says, 'Right, he was there. And he said 'he was living there at the time.' And later he said, 'At the time, I assumed that he was living there.'

How does he know? A man is identified as a member of the household. Now you are asking, 'Is he living in the house?' There is no way he can tell whether he's living there.

\* \* \*

THE COURT: \*\*\* He said the man identified himself as a member of the household. I'm trying to look at it fairly. I am not saying this is not a close question, but if we have to take it in the context in which we have it, if a man says, 'I am a member of the household' — Now you are asking him was he living there? He said 'I assumed so.' That's part of being a member of the household. He doesn't know. So I agree with him, he is a member of the household."

The judge went on to find that there was no reason for Deputy Nawls to lie and that he was believable.

In *Marnik v. Cusack* (1925), 317 Ill. 362, 364, this court spoke of a similar dispute which involved a question of personal service and stated:

"The stability of judicial proceedings, however, requires that the return of an officer made in the due course of his official duty and under the sanction of his official oath should not be set aside merely upon the uncorroborated testimony of the person on whom the process has been served but only upon clear and satisfactory evidence. [Citations.]"

Johnson does not dispute the rule as pronounced in *Marnik v. Cusack* but contends that rule applies only in cases of personal service and does not apply where there has been substitute service, as in the case now before us. In support of this position, Johnson cites *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235. In *Harris*, the court stated:

"[W]here such a return is challenged by affidavit and there are no counteraffidavits, the return itself is not even evidence, and, absent testimony by the deputy, the

affidavits must be taken as true and the purported service of summons quashed." (*Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235, 237.)

Although both *Marnik* and *Harris* correctly state rules of law concerning the effect of recitations in the sheriff's return, neither case is completely controlling under the facts of the case now before us. In *Ingram v. MFA Insurance Co.* (1974), 18 Ill. App. 3d 560, the appellate court properly stated the effect of the sheriff's return where the service is had upon an agent of a corporation or when there is substitute personal service. The officer's return is *prima facie* evidence of service which cannot be set aside upon the uncorroborated affidavit of the person served. It can only be set aside by clear and satisfactory evidence. (*Marnik v. Cusack* (1925), 317 Ill. 362.) This rule applies, however, only to matters within the knowledge of the officer making the return, such as the facts that service was made, that it was made upon a person who gave his name as Joe Johnson in this case, and that service was made at a particular place. When service is had upon a corporation by serving an agent, the fact of agency of the person served may not be within the personal knowledge of the officer. The recital in the return that service was made upon a person who was an agent of the corporate defendant is not, therefore, conclusive and can be denied and placed in issue by the affidavit of the defendant. If the affidavit stands unrebutted or uncontradicted, it is a proper basis for quashing the service. (See *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235.) The same rule applies where there is substitute personal service, as in our case. The fact that service was made upon a person who said his name was Joe Johnson and the place where it was made are within the personal knowledge of the officer and cannot be contradicted by the uncorroborated affidavit of the defendant. However, the recital in the return that Joe Johnson was a member of defendant's household was pre-

sumptively not within the personal knowledge of the officer. This recital could be denied by the affidavit of the defendant, as it was. If the affidavit were not contradicted, or if it were unrebutted, that part of the affidavit attacking those recitals in the return which are beyond the personal knowledge of the officer would be taken as true.

Here, however, Nibco did not rely solely on the return of the summons. When the question of the validity of the recitals in the return was raised, evidence of the deputy who made the service was presented in support of those recitals. The question of fact was thus presented to the trial court as to whether the person whom the deputy served was a member of the defendant's household on the date that service was made. The deputy gave evidence in support of his conclusion that Joe Johnson was a proper person upon whom substitute service could be made. We have set out much of that testimony above. Defendant Johnson offered no evidence to contradict or rebut the deputy's testimony. The trial court had, in support of her position, only the bare assertion contained in her affidavit, which, of course, is not subject to cross-examination. The weight to be given to the assertions in the affidavit and to the testimony of the deputy must be peculiarly within the province of the trial court.

In *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, this court discussed the proper review of findings of the trial court in a bench trial and stated:

"Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. [Citations.] Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because

we might disagree with it or might, had we been the trier of facts, have come to a different conclusion." *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.

The trial court, when it resolved the dispute as to service, made a determination of a question of fact, and we cannot say that the court's determination was contrary to the manifest weight of the evidence. We will, therefore, not reverse its holding.

Johnson also complains in her brief that Nibco appeared *ex parte* in Nibco v. Johnson and obtained a default judgment without giving notice to her attorneys. This default judgment was based upon the above substitute service which we have found to be valid. Our examination of the record shows that Johnson failed to file an appearance in Nibco v. Johnson or have her attorney file one on her behalf and was, therefore, in default for failure to plead in connection with this matter.

Rule 2.1 of the circuit court of Cook County provides that "written notice of the hearing of all motions shall be given to all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead ***." Patricia Johnson was not entitled to notice of the *ex parte* motion for a default judgment. Furthermore, the record indicates that the default judgment was entered on April 27, 1978, at which time the record reflects a "notice of judgment card" was mailed to Patricia Johnson, thus giving her notice of the default judgment and an opportunity to move to vacate the judgment. The issue raised by her motion in the trial court concerned the validity of the substitute service on Joe Johnson and not irregularities in the service or whether it was proper to enter an *ex parte* default judgment.

Patricia Johnson and the appellate court both cite *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, as holding that strict compliance with all statutory requirements must be shown when personal jurisdiction is based upon substitute service of summons. Johnson's motion and affidavit

created only one question of fact, which we have heretofore addressed, and which the trial court found contrary to Johnson's contention. The other recitals in the deputy's return, not having been challenged, are presumed correct. Also, the service stamp indicates that a copy of the summons was mailed to Patricia Johnson at her abode, and pursuant to the statute, this is to be taken as evidence that it has been done. (Ill. Rev. Stat. 1981, ch. 110, par. 2—203(a).) As the record stands, it reflects strict compliance, which *Clinton* held is required.

For the reasons set forth herein, the judgment of the appellate court is reversed and the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

The testimony of Deputy Sheriff Arthur Nawls does not satisfactorily rebut Patricia Johnson's sworn statement that no Joe Johnson resided with her on the date of the alleged service and that there were no males living at her home on that date. A careful reading of Nawls' testimony reveals that he had no knowledge whether the person he claimed to have served (Joe Johnson) was a member of the household of Patricia Johnson; Nawls never testified that Johnson told him he lived at the place where service was made on him or that he had knowledge that Joe Johnson lived there or was a member of the household. The following questions and answers put to Nawls by George Lopuszynski, attorney for Nibco, who called Nawls as a witness to testify regarding the service he made, and by Daniel Olofsson, attorney for Patricia Johnson, establish this.

The direct examination of Nawls by Mr. Lopuszynski included the following exchange:

"Q. And you attempted to serve in this case, and who did you serve?
A. J. Johnson.

Q. Did that person identify himself as a member of the household?

.A. Yes, sir."

Deputy Nawls acknowledged when questioned by Mr. Olofsson and when further questioned by Mr. Lopuszynski that this testimony was based only on an assumption.

The examination by Mr. Olofsson went as follows:

"Q. Did you have any knowledge prior to service that Mr. Johnson was at home?

A. I didn't understand the question.

Q. Did you have any prior knowledge if Mr. Johnson was living in the home?

A. Whether he was living there or not?

Q. Right, he.

A. He was there. He was living there at that time?

Q. At that time?

A. I assumed that he was living there. He was there.

Q. He was just present at the household?

A. He was at the household.

Q. What time was your service?

A. One-ten p.m.

Q. So, based on your assumption, you assumed he was a member of the household?

A. Yes."

On redirect examination by Mr. Lopuszynski, Nawls testified:

"Q. Officer Nawls, when you attempt substitute service on a person other than one named in the summons, do you ask the person whether they know the person named in the summons?

A. Yes, sir.

Q. Do you recall whether you asked Mr. Johnson that?

A. Yes, sir.

Q. Did he say he knew Mrs. Johnson?

A. He said he did.

Q. Did he say what his relationship was, or do you recall?

A. No.

Q. Did you ask him whether he lived there?

A. No, sir, I didn't.
Q. Okay. Do you recall how we was dressed?
A. No, I don't."

Although I agree with the majority's observation in reliance upon *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, that the finding of the trial judge who has observed the demeanor of a witness should not be lightly disregarded, Nawls' testimony quoted above shows that he answered in the affirmative the following question put to him on direct examination: "Did that person [J. Johnson] identify himself as a member of the household?" Yet this response was contradicted by the substitute-service stamp which Deputy Nawls affixed to the reverse side of the summons; it stated that the person served "refused to identify self." Then on cross-examination Nawls acknowledged that he had no knowledge that Johnson was living there, but "assumed" he was living there and assumed he was a member of the household because he was there. On redirect examination Nawls conceded he did not ask Johnson whether he lived there.

I do not agree with the trial court's determination that Nawls' testimony leads to the conclusion that Johnson was a member of the household. The testimony was ambiguous and self-contradictory. Nawls started out saying Johnson identified himself as a member of the household and ended up testifying that he never asked him if he lived there. Nowhere in Nawls' testimony can I find the statement relied on by the trial judge that Johnson said he was living there at the time. Moreover, Nawls' assumption that Johnson was a member of the household does not support the trial judge's conclusion which appears in the record as follows and which the majority quotes: "That's part of being a member of the household. He doesn't know. So I agree with him, he is a member of the household."

I believe that Patricia Johnson was entitled to a closer reading of the record than this court has given it. Such a reading affords no basis for the deputy's statement on his

substitute-service stamp that Joe Johnson was a member of Patricia Johnson's household or for disregarding Patricia Johnson's sworn statement that he was not. Absent proof of such a relationship the service was invalid.

This case does not involve a question of credibility, that is whether the deputy sheriff was lying or, as the circuit court judge put it, whether he had any reason to lie. All that Nawls' testimony established is that Joe Johnson never told him that he lived at the place of service or that he was a member of the household, but that Nawls assumed this was the case because Johnson was there. In view of Patricia Johnson's sworn denial that a Joe Johnson resided with her, I do not believe Nawls has provided sufficient support for valid substitute service or that his testimony adequately supports the deputy's return of service in which he stated he served a member of the household of Patricia Johnson. The state of the record is that, assuming Nawls did hand the summons to a person named Joe Johnson, Nibco has failed, in the face of Patricia Johnson's denial, to establish that the person who received the summons was one our substitute-service statute made eligible to receive it.

This case does not involve a question of the stability of judicial proceedings and the service of judicial process. Rather it involves adherence to the principle that strict compliance with the provisions of section 2—203(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—203(a)) is required whenever personal jurisdiction is based on constructive or abode service, so that the law can insure that defendants will receive adequate notice of actions filed against them and can have their day in court (*Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 555). *Clinton* also teaches that where a constructive service is challenged by affidavit, as Patricia Johnson has done here, the return of service itself is not evidence, and absent testimony to the contrary by the deputy, the affidavit must be

taken as true. I would hold that Nawls' testimony was not sufficient to overcome Patricia Johnson's affidavit and that the trial court, in ruling that it was sufficient, misunderstood his testimony. No matter how impressive his demeanor was when he appeared as a witness, his plain words are not sufficient to establish proper service.

I would affirm the appellate court in order to give Patricia Johnson her day in court.

JUSTICE GOLDENHERSH joins in this dissent.