WILLIAM DEC *et al.*, as Assignees of Michael G. Coan, Plaintiffs-Appellees, v. GEORGE MANNING, Defendant-Appellant.

First District (1st Division) Nos. 1—91—2948, 1—92—2031 cons.

Opinion filed May 24, 1993.—Rehearing denied July 19, 1993.—Modified opinion filed July 26, 1993.

Terrence Michael Jordan, of Chicago, for appellant.

Jody Ann Lowenthal, of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

In this consolidated appeal, we are presented with questions concerning the propriety of a default judgment predicated upon substituted service of process.

The procedural history of this case is both complex and confusing. On September 6, 1983, plaintiff Michael Coan filed his original complaint against defendant, George Manning, in which Coan alleged that Manning owed him $1,500 "earnest money never received" and $5,000 for "architect's fees." Following the return of two unserved summons, the circuit court appointed a special process server. On December 13, 1983, the summons was returned, reciting that Manning had been served by substituted service in that the complaint had been left with a family member. Manning never appeared in the action, and, on June 28, 1984, the circuit court entered judgment for Coan in the amount of $6,500.

Over the next three years, Coan attempted to enforce the judgment by filing several citations to discover assets. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1402; 134 Ill. 2d Rules 277(b), (c).) These citations were returned unserved. During the same time, Coan experienced various financial difficulties, culminating in a bankruptcy action against him in Federal court. According to the settlement agreement reached in that action on August 30, 1989, Coan's 1984 judgment against Manning was assigned to William Dec and Walter Aque.

In March 1990, Manning was served with an alias citation to discover assets.[1] In response, Manning filed a motion to quash service of summons and set the motion to be heard in the circuit court on April 24, 1990. In his motion to quash, Manning stated that he was never served in the underlying action and had no knowledge of it. He asserted that he lived alone at the time of the alleged substituted service and that no one else resided in the building in which his apartment was located.

The record establishes that the hearing on Manning's motion was continued several times until August 2, 1990. Prior to that date, Manning's attorney, Terrence Jordan, wrote to Coan's attorney, stating that he would be "out of town" on August 2, 1990. Jordan wrote that he was considering having "other counsel" appear for him on that date, and that if he was unable to make "appropriate arrangements," he would "advance the case for hearing." Apparently, no other arrangements were made because the court file's "half sheet" indicates that on August 2, 1990, Coan's attorney appeared and informed the trial judge that Jordan was "out of town." Although Coan's attorney "did not object" to a continuance, Manning's motion was "stricken."

No further action was taken in the case until February 15, 1991, when Manning filed a "notice of motion" which indicated that he would present the "attached Motion to Quash" to the court for a hearing on March 6, 1991. That motion is exactly the same as Manning's motion to quash service which had been stricken in August 1990. The record does not contain any response filed by Coan.

On March 6, 1991, the circuit court entered an order which allowed Dec and Aque, the assignees of Coan's 1984 judgment, to intervene in the case and to substitute for Coan as the plaintiffs. In the same order, the court also granted Manning until April 6, 1991, to file an affidavit in support of his motion to quash service and set the motion to quash for hearing on May 21, 1991. Dec and Aque filed an amended motion to "strike renewed motion to quash." The motion did not present any countervailing affidavits to rebut Manning's affidavit regarding the service. Rather, Dec and Aque argued that Manning's motion to quash should be stricken on the grounds that it violated Circuit Court Rule 2.3 (Cook Co. Cir. Ct. R. 2.3) and because Manning was guilty of *laches*. On May 29, the circuit court ruled that Manning failed to comply with Rule 2.3 and was guilty of *laches*. The court's

---

[1] It is unclear who filed this citation as Dec and Aque were not granted leave to intervene in the action and substitute for Coan as plaintiff until March 6, 1991.

order indicates that, although the special process server was available in court to testify, he was not called due to the court's disposition of the motion. The court granted Dec and Aque's motion to strike Manning's motion to quash and denied Manning's motion to quash.

Manning subsequently filed a motion to reconsider, and, after its denial, filed a timely notice of appeal.

Meanwhile, during the period in which Manning sought reconsideration of the denial of his motion to quash, Dec and Aque sought to revive the 1984 judgment. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1601.) Sheriff attempts to serve Manning proved unsuccessful, and the circuit court once again appointed a special process server. Manning was personally served on August 5, 1991. The record does not contain any appearance filed by Manning's attorney in the revival action. On August 28, 1991, the circuit court ordered the revival of the 1984 judgment.

It is difficult to discern what exactly occurred following the entry of the revived judgment. The record indicates that Dec and Aque filed a "petition for turnover order." However, a copy of the actual petition is not included in the record. At the scheduled hearing on the petition, the circuit court entered an order in which enforcement of the 1984 judgment was stayed "pending appeal and the posting of a bond."

It appears that no further action took place in the case until March 1992, when Dec and Aque had the La Salle National Bank served with a third-party citation to discover assets. Evidently, the bank acted as trustee of a land trust in which Manning was the sole beneficiary. Manning filed a motion to dismiss the "supplemental" proceedings, arguing that the 1984 judgment was void because he was never served. The circuit court entered two orders on May 19, 1992. The first denied Manning's motion to dismiss the "supplemental proceedings" and contained language finding no just reason to delay enforcement or appeal of the order. The second order granted Dec and Aque's petition for the entry of a turnover. Manning also sought review of both of these orders by filing a timely notice of appeal. The appeals were consolidated by this court on July 20, 1992.

■ Dec and Aque initially suggest that Manning's noncompliance with several supreme court rules concerning appellate procedure (see 134 Ill. 2d Rules 303(c)(2), 342) mandates the dismissal of this appeal. We have reviewed these claims and conclude that, although inartful and somewhat incomplete, Manning's briefs and notice of appeal comply with the rules. That said, we do not condone, in any way, the sloppiness and the disorganization that characterize the briefs and the

record which have been submitted by the parties to this court. Such appellate practice is a disservice to both the litigants and the court as it impedes expeditious review of the case. Additionally, we note the record on appeal is incomplete—many filings and orders are missing. An appellant has the burden to present a sufficiently complete record of the circuit court proceedings in order to support an appellate claim of error. Therefore, any doubts which may arise from the incompleteness of the record will be resolved against Manning. See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

■ Insisting that he fully complied with Circuit Court Rule 2.3, Manning asserts that the circuit court erroneously denied his motion to quash service. Circuit Court Rule 2.3 provides:

"The burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court may enter an order overruling or denying the motion by reason of the delay." Cook Co. Cir. Ct. R. 2.3.

Here, Manning filed his motion to quash service on April 10, 1990, and scheduled the motion for a hearing 10 days later, on April 24, 1990. On that date, it appears that the cause was continued. In fact, the cause was continued several times until August 2, 1990, when the court struck Manning's motion. We perceive no violation of Rule 2.3 under these facts. Furthermore, the record clearly indicates that Manning complied with the rule when he refiled his motion on February 15, 1991. Again, Manning's scheduled hearing date, March 6, 1991, was within 90 days of the date the motion was filed. The motion was then continued until May 21, 1991. Manning set both motions for hearings within the requisite 90-day period, and it appears the motions were indeed called. That the cause was continued from time to time does not render the motion invalid under Rule 2.3.

Dec and Aque argue, nevertheless, that the court's order of August 2, 1990, which struck Manning's "motion to vacate" was a final order for purposes of appeal. They further characterize Manning's renewed motion to quash service, filed in 1991, as an untimely motion to reconsider the order of August 2, 1990. Moreover, they argue that Manning waited too long between August 1990 and February 1991 to "renotice" the motion up for hearing and, in that way, violated Rule 2.3. We find these arguments unpersuasive.

The circuit court apparently struck Manning's motion to quash service despite his opponent's agreement to a continuance and despite the fact that his attorney was not present. We note that no order is contained in the record from which we may glean what transpired in

the circuit court on that date. Although the court file "half sheet" contains a notation which indicates that Manning's "motion to vacate" was stricken, we do not consider that entry to be the equivalent of a court order because the entry could have been made by a court clerk or other court personnel. Indeed, the notation's reference to a "motion to vacate" is erroneous in that Manning did not file a "motion to vacate." The motion set for hearing on that date was a motion to quash service. Additionally, it is unclear whether the motion was stricken with or without prejudice. Because of these ambiguities and, in view of the nature of the allegations contained in the stricken motion, we choose to treat the motion as if it had been stricken without prejudice. As such, it was not a final order for purposes of appeal. Moreover, such a disposition does not preclude Manning from refiling the motion at a later date. Rule 2.3 makes no mention of "renoticing" a motion for hearing in such circumstances. Accordingly, under the facts presented here, Rule 2.3 is not implicated in the manner suggested by Dec and Aque.

Manning maintains that he may challenge the validity of the 1984 judgment at any time because the circuit court could not enter the default judgment as it lacked personal jurisdiction over him.

A judgment's validity is dependent upon the court having both jurisdiction of the subject matter of the litigation and of the parties. (*State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156.) Personal jurisdiction can be obtained only by service of process as provided by statute, unless it has been waived by a general appearance in the action. (*Thill*, 113 Ill. 2d at 308.) The Code of Civil Procedure (the Code) provides for service of process either by summons (Ill. Rev. Stat. 1989, ch. 110, pars. 2—203, 2—204, 2—205) or by publication and mailing (Ill. Rev. Stat. 1989, ch. 110, par. 2—206). Moreover, where the party against whom an *ex parte* order of default was entered appears in court and asserts that the judgment was procured without proper service of process, the judgment is considered void and is subject to vacatur, regardless of whether the defendant had actual knowledge of the proceedings. (*Thill*, 113 Ill. 2d at 308; *First Federal Savings & Loan Association v. Brown* (1979), 74 Ill. App. 3d 901, 393 N.E.2d 574.) A void judgment, order, or decree may be attacked at any time or in any court either directly or collaterally (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309, 489 N.E.2d 1360), without any showing of diligence or meritorious defense. (*Sawant*, 111 Ill. 2d at 309; *Francisco v. Francisco* (1980), 83 Ill. App. 3d 594, 596, 404 N.E.2d 537.) In light of these principles, Dec and Aque's arguments regarding timeliness and *laches* must fail.

■ Section 2—203 of the Code governs the manner of service of summons upon an individual defendant. (Ill. Rev. Stat. 1989, ch. 110, par. 2—203.) The return of the officer or other authorized person making service of a summons on a defendant by delivering a copy to another person, that is, by substituted service (see Ill. Rev. Stat. 1989, ch. 110, pars. 2—203(a), (b)), must show strict compliance with every requirement of the statute authorizing such substituted service. (*Thill,* 113 Ill. 2d at 309.) That is so because the presumption of validity that attaches to a return reciting personal service does not apply to a return reciting substituted service. (*Thill,* 113 Ill. 2d at 309; *Werner v. W.H. Shons Co.* (1930), 341 Ill. 478, 482-83, 173 N.E. 486.) In such cases, the return or affidavit of service affirmatively must state that a copy of the summons was left at the defendant's usual place of abode with some family member 13 years of age or older, that such family member was informed of the contents of the summons, and that the officer or other authorized person making service sent a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode. *Thill,* 113 Ill. 2d at 310.

■ The return of service in the present case indicated that the special process server, Leonard Smith, served Manning by leaving a copy of the summons and complaint at Manning's usual place of abode with "a John Doe refused all ID's [illegible] a person of the family of the age of 13 years or upwards." Smith swore that he told the unidentified person of the contents of the summons and that he placed copies of both the summons and complaint in the mail addressed to Manning with postage fully prepaid. However, in his affidavit in support of his motion to quash service, Manning denied that anyone lived with him at the address where the service was made, and he swore that he was not at home on the date the service was purported to have been made. Thus, Manning placed the validity of the substituted service in issue through his affidavit. Where such an affidavit stands unrebutted and uncontradicted, as here, it serves as a proper basis for quashing service. *Nibco Inc. v. Johnson* (1983), 98 Ill. 2d 166, 173, 456 N.E.2d 120; *Prudential Property & Casualty Insurance Co. v. Dickerson* (1990), 202 Ill. App. 3d 180, 185, 559 N.E.2d 854.

Dec and Aque note correctly that where the rights of innocent third-party assignees have attached, a judgment cannot be collaterally attacked, even for an alleged jurisdictional defect, unless such defect affirmatively appears in the record. They insist that such a defect is absent in the present case.

In determining whether a lack of jurisdiction is apparent from the record, the whole record must be examined, including the pleadings, the return of process, and the judgment or decree of the court. (*Thill,* 113 Ill. 2d at 313.) The record before this court indicates various discrepancies, which tend to weaken Dec and Aque's argument and to establish the requisite affirmative jurisdictional defect. For example, the circuit court "half sheet" indicates that Manning was personally served on January 9, 1984. However, the service return filed by the special process server reveals that Manning was served by substituted service on "John Doe" on December 13, 1983. The judgment was then entered *ex parte.* Clearly, Dec and Aque should have been aware of the confused status of the service of process allegedly utilized in obtaining jurisdiction over Manning and upon which the default judgment was based. Parenthetically, we note that, if "John Doe" refused "all ID's" as was stated in the return, no basis exists for even assuming that such a person was a member of Manning's family for purposes of substituted service as is mandated by the statute. In light of these facts, the record affirmatively shows that defendant was not served in the manner prescribed by the statute.

Dec and Aque, however, insist that no further question exists as to the validity of the 1984 judgment because Manning did not appear in the revival action. That failure to appear, they argue, precludes any assertions of invalidity Manning may now wish to raise. We disagree.

A *scire facias* proceeding, that is, an action to revive a judgment (see Ill. Rev. Stat. 1989, ch. 110, par. 2—1601), is not a new proceeding, but a continuation of the suit in which the judgment was originally entered. (*Bank of Edwardsville v. Raffaelle* (1942), 381 Ill. 486, 45 N.E.2d 651.) Our supreme court has held that the only defense to such an action is either a denial of the existence of the judgment or proof of a subsequent satisfaction or discharge of the judgment. (*Raffaelle,* 381 Ill. at 486; *Bank of Eau Claire v. Reed* (1908), 232 Ill. 238, 240, 83 N.E. 820.) These defenses must appear on the face of the record without reference to any matters *aliunde* the record. (*J.D. Court, Inc. v. Investors Unlimited, Inc.* (1980), 81 Ill. App. 3d 131, 134, 400 N.E.2d 1083.) The recognized effect of a revived judgment is to "revive the judgment as it formerly existed and to reinvest it with the same attributes and conditions which originally belonged to it." *Reed,* 232 Ill. at 241.

Given that effect, we find Dec and Aque's argument unpersuasive because the revival of a prior judgment cannot cure fatal defects which were present at the time the judgment originally was entered. (See *J.D. Court, Inc.,* 81 Ill. App. 3d at 134.) As noted previously, a

judgment is subject to challenge at any time on the basis that it was rendered without personal jurisdiction. Revival cannot preclude such a challenge. Thus, the judgment revived in the present case exists today as it did in 1984. That revived judgment is no less susceptible to Manning's challenge to its validity based upon lack of personal jurisdiction than the original judgment was. We also note that, had Manning appeared in the action, he would not have been able to raise his argument regarding the lack of personal jurisdiction as that is not one of the recognized defenses to the action.

The proceedings in this case are troubling. Although the record is often unclear as to the proceedings below, what is apparent is the fact that Manning's motion to quash has yet to be heard on the merits, and his affidavit, which casts doubt on the validity of the service of process, has yet to be rebutted. The circuit court's order striking that motion due to the alleged procedural violations of Rule 2.3 and *laches* was erroneous and requires reversal and remandment. We note that the manner in which the circuit court ruled on the motion to quash precluded a hearing on the merits of Manning's claim, namely, whether service of process properly was obtained upon him in 1983. The record before this court indicates that no affidavits or testimony were introduced or offered by Dec and Aque to refute the allegations contained in Manning's motion and affidavit. Upon remand, Dec and Aque, if they so desire, should respond to Manning's motion as to the factual matters there alleged, and the circuit court should hold an evidentiary hearing to determine the jurisdictional basis, if any, for the entry of the 1984 judgment. Furthermore, we are compelled to vacate the circuit court's orders denying Manning's motion to dismiss the "supplemental proceedings" and granting the turnover of the land trust held by the La Salle National Bank. The circuit court, in entering the turnover order, appears to have ignored its previous order of October 25, 1991, in which enforcement of the 1984 judgment was stayed. In any event, no enforcement of the 1984 judgment should be ordered until the jurisdictional question concerning that judgment has been addressed.

The orders of the circuit court are reversed and vacated, and the cause is remanded for further proceedings consistent with this opinion.

No. 1—91—2948, Reversed and the cause remanded.
No. 1—92—2031, Vacated.

CAMPBELL and BUCKLEY, JJ., concur.