2021 IL App (1st) 210335-U

FIFTH DIVISION
October 15, 2021

No. 1-21-0335

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES *ex rel.* TAKEIAH PITTMAN, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 08 D 90568 |
| | ) | |
| ROBERT N. JACKSON, | ) ) | |
| | ) | Honorable Abbey F. Romanek, |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Because there was conflicting documentary evidence regarding the location of the respondent's usual place of abode at the time he was served with process, we reverse the circuit court's judgment denying his section 2-1401 petition remand for an evidentiary hearing.

¶ 2                                    BACKGROUND

¶ 3      The Illinois Department of Children and Family Services (Department) filed a petition for child support on behalf of Takeiah Pittman against respondent Robert N. Jackson. After Jackson was purportedly served by substitute service and did not appear, the court entered a default judgment against him. Years later, he sought to vacate the support order on the basis that he was never properly served with process. Relying solely on largely unauthenticated documentary evidence and affidavits, the circuit court denied his petition. Because the evidence raised issues of fact regarding whether service on Jackson was effectuated on a family member at his usual place of abode, we reverse and remand for an evidentiary hearing.

¶ 4                                       FACTS

¶ 5      On May 1, 2008, the Department filed a petition for child support on Pittman's behalf in the Circuit Court of Cook County, alleging that Jackson was the father of Pittman's two-year-old minor daughter, P.P. The petition requested determinations of both Jackson's paternity of P.P. and his corresponding support obligation. On May 13, a deputy sheriff executed a return of service stating that substitute service of Jackson was effectuated by serving his mother, Catherine Johnson,[1] at an address on East 136th Street in Riverdale, Illinois. After Jackson failed to appear in the court proceedings, the Department moved for an order holding Jackson in default.

¶ 6      On August 21, 2008, the circuit court entered orders (1) finding that Jackson was duly served, (2) defaulting him for failure to appear, (3) adjudicating him to be the father of P.P., (4) imposing a temporary "minimal" current child support obligation, and (5) continuing the matter for a future hearing to determine his retroactive and permanent support obligations. The

---

[1] The return of service indicates that Johnson is Jackson's mother. In his brief, Jackson claims that Johnson is actually his stepmother. Given our disposition of the appeal, the distinction is irrelevant.

Department sent discovery requests to Jackson that went unanswered. In 2010, the court entered a permanent support order and reserved the issues of retroactive and medical support.

¶ 7 In 2018, the Department filed a petition seeking a judgment for arrearages that had accumulated to date. After the court entered a permanent order of support, the Department filed a petition for rule to show cause against Jackson for his failure to pay the adjudicated arrearages. The court eventually entered a rule to show cause, an order adjudicating Jackson to be in indirect civil contempt of court for his failure to pay the arrearages, and a writ of body attachment against him. Jackson was apprehended but released on bond. The record contains a reference that Jackson appeared on February 14, 2018, to request genetic testing to determine the paternity of P.P. However, because the issue of Jackson's paternity had been addressed by the default order, the court did not order such testing.

¶ 8 In July 2019, Jackson filed a petition pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)) requesting that the court vacate all past orders against him for lack of jurisdiction. Specifically, Jackson alleged that the 2008 substitute service upon his stepmother in Riverdale was defective because the Riverdale address was not his usual place of abode at that time. Instead, he claimed he was then living in a basement apartment at 7600 S. Aberdeen Street in Chicago.

¶ 9 Jackson supported his petition with three affidavits. The first affidavit, from Jackson's father, Bobby Johnson, stated that he resided at the Riverdale address on May 13, 2008, and that on that day, those residing in the house were only himself, his late wife Catherine Johnson, his daughter Myrna Jackson, and his granddaughter Valencia Jackson. He further stated that Jackson was not living at the Riverdale address at the time of service, having "moved out" in 1999. The second affidavit, from Valencia Jackson, corroborated Bobby Johnson's affidavit. Jackson

submitted his own affidavit, further corroborating the other affidavits, and adding that he lived alone at the Aberdeen address. He supported this affidavit with an unauthenticated printout from Commonwealth Edison's billing records showing an account in his name at the Aberdeen address which was opened in 2004 and had a "final reading" in 2009.

¶ 10    On September 13, 2019, the court struck Jackson's petition with leave to reinstate for failure to appear, and issued a new writ of body attachment. He re-noticed the petition for a later date, and the Department requested time to respond. In its response, the Department argued that Jackson's affidavits were "undoubtedly self-serving and inaccurate" and lacked credibility. In particular, the Department noted that Jackson was served at the Riverdale address with respect to a different child support case during a time in which he now claimed not to live there and did not contest that service. It also supplied documentation showing that (1) he used the Riverdale address in other cases, on his driver's license, and on bond slips; and (2) discovery on third parties generated in other cases generated documents showing that Jackson used the Riverdale address. None of these documents were supported by an affidavit or an authentication.

¶ 11    The Department also argued that Jackson waived any objection to the court's personal jurisdiction over him because he appeared on February 14, 2018, to request genetic testing to determine whether he was P.P.'s biological father without contesting jurisdiction.

¶ 12    Jackson responded, arguing that the Department's characterization of his affidavits as "self-serving" was disingenuous, since only an individual and his family would be able to testify regarding the individual's usual place of abode. He also argued, and offered an affidavit, that the Riverdale address he listed on certain documents was a "mailing address" he used because it was a "stable address" of an elder relative that was unlikely to change over time.

¶ 13    On September 2, 2020, the circuit court conducted a virtual hearing using videoconference software. The court entered an order denying the section 2-1401 petition, stating that it heard "arguments of counsel" and briefly reciting the documentation presented by the Department and Jackson. The court stated that the "weight of the evidence provided regarding the Respondent's address at the time of service favors the State ***." The order makes no reference to any testimony being taken at the hearing.

¶ 14    Jackson moved to reconsider the September 2 order. He argued that the Department's documents were of no evidentiary value because they pre-dated the time of service in this case, lacked foundation, and were unsupported by any affidavits. The court denied the motion to reconsider. This appeal followed.

¶ 15                                                    ANALYSIS

¶ 16    On appeal, Jackson seeks reversal of the order denying his section 2-1401 petition and the order denying his motion to reconsider. He argues that the circuit court should have granted the petition, quashed the 2008 service of process, and vacated all orders stemming from that service because they were void *ab initio*. The Department counters that the circuit court properly weighed the documentary submissions and determined that the preponderance of the evidence supported the court's finding that service was proper. The Department also contends that Jackson voluntarily subjected himself to the jurisdiction of the court by appearing in 2018 to request genetic testing, about a year before he filed his section 2-1401 petition. Both sides concede that the circuit court disposed of the petition solely on the documents presented and did not conduct any evidentiary hearing on it.

¶ 17 We have jurisdiction over this interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (Ill. Sup. Ct. R. 304(b)(3) (eff. Mar. 8, 2016)), which grants an appeal as a matter of right from the denial of a section 2-1401 petition.

¶ 18 We note that the parties committed a common error when litigating the section 2-1401 petition. A section 2-1401 petition is the initial pleading in a new proceeding, rather than a pleading seeking relief in the midst of an ongoing case. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002). Because it is an initial pleading, a section 2-1401 petition is "procedurally the counterpart of a complaint and subject to all the rules of civil practice that that character implies." *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 207 (2010). The Department should not have filed a "response" to the section 2-1401 petition but instead pleaded to it as if it were a complaint, such as by filing an answer, or a motion under section 2-615 or 2-619 of the Code. See 735 ILCS 5/2-615, 2-619 (West 2020). The parties and the circuit court treated the petition as if it were a motion filed in the normal course of litigation. But because substance trumps form in this instance, this error was not fatal. *Studentowicz v. Queen's Park Oval Asset Holding Trust*, 2019 IL App (1st) 181182, ¶ 9. We admonish the litigants to follow the appropriate procedure in the future.

¶ 19 When a defendant is not properly served, an order entered against that defendant is void *ab initio* regardless of whether he had knowledge of the proceedings. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). A section 2-1401 petition is the appropriate pleading to vacate a void judgment, such as a judgment entered upon invalid service of process, more than 30 days after the judgment was entered. *Sarkissian*, 201 Ill. 2d at 103. The petition must be supported by affidavit or other appropriate showing as to matters not of record.

¶ 20 Section 2-203(a)(2) of the Code governs substitute, or abode, service. It provides:

> "(a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made *** (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode ***. The certificate of the officer or affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so." 735 ILCS 5/2-203(a)(2) (West 2020).

¶ 21    When service is accomplished by substitute service, no presumption of validity attaches to the return of service. *State Bank of Lake Zurich*, 113 Ill. 2d at 309. The return of the server must show strict compliance with every requirement of the substitute service statute authorizing such service because the presumption of validity that attaches to a return of personal service reciting personal service does not apply to substitute service. *Id.* The recital in the return that the service was made upon a person who is a member of the defendant's household may be placed at issue by the defendant's affidavit. *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172-73 (1983). If that affidavit is not contradicted, it should be taken as true. *Id*. at 173. If the defendant meets his burden, then the court should set an evidentiary hearing on the issue of service. *State Bank of Lake Zurich*, 113 Ill. 2d at 312. We review the dismissal of a section 2-1401 petition *de novo. People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 22 We next address the Department's contention that Jackson forfeited any claim to an evidentiary hearing by not requesting one below and acceding to the manner in which the circuit court disposed of the petition. Our supreme court has explained:

> "*** [W]aiver and forfeiture rules serve as an admonition to the litigants rather than a limitation upon the jurisdiction of the reviewing court and that courts of review may sometimes override considerations of waiver or forfeiture in the interests of achieving a just result and maintaining a sound and uniform body of precedent." *Jackson v. Board of Election Commissioners of the City of Chicago*, 2012 IL 111928, ¶ 33 (citing *Daley v. License Appeal Comm'n*, 311 Ill. App. 3d 194, 2004 (1999); *Hux v. Raben*, 38 Ill. 2d 223, 224 (1967)).

Given the mischaracterization by the parties and the court below regarding the correct procedure for litigating a section 2-1401 petition, we decline the Department's invitation to invoke forfeiture here, in the interests of fairness and consistency.

¶ 23 The Department concedes that "this court has not had occasion to determine specifically which documentary evidence itself can rebut the defendant's affidavits" in a case involving a challenge to substitute service. But as the case law outlined above holds, the process server's assertion of a defendant's usual place of abode can be rebutted by the defendant's own affidavit. See, *e.g.*, *Nibco*, 98 Ill. 2d at 172-73. The defendant (here, Jackson), who is in the best position to comment on where is usual place of abode, has indeed done so, fulfilling his burden at this juncture. The Department submitted some self-authenticating documents of which the circuit court could take judicial notice. Some of the Department's documents tend to show that Jackson used the

Riverdale address for important legal purposes, such as his driver's license, requiring individuals to state their correct residence address. This is important and compelling evidence of an individual's usual place of abode. Indeed, employing an estoppel theory, courts have found a public record an individual creates of his residence to be compelling, if not almost conclusive, on the point. See, *e.g.*, *Neely v. Board of Election Commissioners for the City of Chicago*, 371 Ill. App. 3d 694, 698 (2007).

¶ 24    As Jackson correctly notes, however, many of the documents are completely unauthenticated and relate to uncertain time frames that do not precisely address where Jackson resided on the date of service. Nonetheless, even when viewed against Jackson's affidavits and evidence, the Department's documents as a whole were sufficient to create a material issue of genuine fact regarding Jackson's usual place of abode on May 13, 2008.

¶ 25    When resolving a contested issue of fact, a circuit court must consider each witness's opportunity to observe the relevant occurrences, his or her memory, his or her demeanor and choice of language while testifying, and where applicable, evidence that on some other occasion the witness made a statement or acted in a manner inconsistent with his or her testimony on a matter material to the issue. *See, e.g.*, Ill. Pattern Jury Inst. (Civil) 1.01(A)[5]. This analytic process is necessary for a trier of fact to discern the truth. Mere pieces of paper do not exhibit demeanor, persistence of memory, experience, or any other characteristics necessary for a finder of fact to discern credibility. The court should have resolved this issue of fact by hearing live witnesses who could testify regarding Jackson's abode and his use of the Riverdale for official purposes.

¶ 26                                CONCLUSION

¶ 27    We vacate the order of the circuit court denying Jackson's section 2-1401 petition and remand for an evidentiary hearing. Given our limited jurisdiction in this interlocutory appeal and

the undetermined ultimate destiny of Jackson's petition, we decline to reach the Department's argument that, if service is quashed, only the orders up to Jackson's 2018 appearance to request genetic testing should be vacated under *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311. We leave this task to the circuit court to resolve on remand if necessary.

¶ 28    Vacated and remanded.