2023 IL App (1st) 220264-U

FIRST DISTRICT,
FIRST DIVISION
March 31, 2023

No. 1-22-0264

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2016 CH 08564 |
| | ) | |
| BARBARA J. TURNER, ET AL., | ) | Honorable |
| | ) | Joel Chupack, |
| Defendant-Appellee, | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the circuit court's orders denying defendant's motion to quash service of process and approving the sale of the foreclosed-upon property where service was proper, the summons was adequate, and the court had personal jurisdiction over defendant.

¶ 2   For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                    BACKGROUND

¶ 4   On June 27, 2016, plaintiff PNC Bank, National Association ("PNC") filed a residential mortgage foreclosure complaint against defendant Barbara J. Turner ("Turner"), in connection with a loan secured by real property located at 11265 South Laflin Street in Chicago, Illinois ("the property"). A special process server was appointed, and substitute service was effected on June

29, 2016. The affidavit of the special process server filed on July 8, 2016, reflects that Turner's daughter, "Eyvette Dayton," accepted service at the property.

¶ 5       PNC filed a Motion for Default based on Turner's failure "to appear, answer, or otherwise plead" despite being "served via substitute service with the complaint and summons on June 29, 2016." The circuit court granted an Order of Default and Judgment of Foreclosure and Sale on May 15, 2017. On October 21, 2019, the property was sold at a judicial sale and PNC moved for an order approving the sale.

¶ 6       On November 13, 2019, Turner filed a Motion to Quash Service of Process pursuant to 735 ILCS 5/2-301, alleging that service was defective. Turner claimed that no one named "Eyvette Dayton" resided at the property and could not have accepted substitute service. Turner also argued that the court lacked personal jurisdiction over her because the caption did not designate her as a "Defendant," in violation of Illinois Supreme Court Rule 101(a). Affidavits from Turner, her daughter, April Drayton, and her son, Darryl Drayton, were attached to her motion, attesting that no one named " 'Eyvette Dayton' resides or has resided at the property."

¶ 7       PNC responded that Turner did not refute that her daughter had been served at the property, or "argue or provide facts establishing that an individual by the name of Eyvette Dayton is not a family member or does not exist." (See *Central Mortgage Co. v. Kamarauli*, 2012 IL App (1st) 112353, ¶ 21 (Section 2-203(a) of the Code does not require that the family member served is a resident of the property.)). PNC also argued that the omission of the word "Defendant" in the summons caption was a "technical error" that did not affect the court's jurisdiction under 735 ILCS 5/2-201.

¶ 8       The circuit court continued the motion for an evidentiary hearing. At the September 11, 2020, hearing, April Drayton testified that she was Turner's daughter and had lived at the property since 2006. April acknowledged that she had a sister named "Yvette Drayton" who lived at 65th

and Western in Chicago. She also admitted that Yvette had visited Turner at the property in the past, but denied she was present on June 29, 2016. Turner also testified that Yvette was not at the property on June 29th. The process server was not called to testify at the hearing.

¶ 9       In a written order entered on September 15, 2020, the circuit court denied Turner's Motion to Quash service. The court found that the process server's affidavit "strictly complied with the requirements for abode service under § 2-203(a) of the Code of Civil Procedure," and that Turner had not met her burden of presenting contradictory evidence. The court indicated that "Turner neither submitted an affidavit from Yvette Drayton nor called her as a witness," and that none of the affidavits mentioned "Yvette Drayton," or denied that Yvette was served. The court recognized that "it is not necessary under § 2-203(a) of the Code that the member of the family served reside at the abode address." The court found that Turner and April's testimony that Yvette was not visiting her mother "four years earlier" was "self-serving and basically uncorroborated."

¶ 10      On October 27, 2021, PNC moved for an order approving the sale of the property. Turner argued, *inter alia*, that "justice has not otherwise been done where the service on [her] should have been quashed and the judgment against [her] should have been vacated."

¶ 11      On January 26, 2022, the circuit court approved the sale of the property.

¶ 12                                ANALYSIS

¶ 13      Turner claims that the circuit court erred in denying her Motion to Quash Service and approving the sale of the property. She further asserts that "justice was not otherwise done" by the entry of these orders.

¶ 14                             Service of Process

¶ 15      In reviewing a decision on a motion to quash service of process, we must determine whether the circuit court's findings of fact are against the manifest weight of the evidence. *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 17. If service is not

proper and the defendant did not voluntarily submit to the court's jurisdiction, the court lacked personal jurisdiction over the defendant and any judgment entered against that party is void. *BankUnited v. Velcich*, 2015 IL App (1st) 132070, ¶ 27. We review *de novo* the issue of whether the trial court obtained personal jurisdiction. *Id.* ¶ 26 (citing *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17)).

¶ 16    "Every defendant in an action filed against him in this State is entitled to receive the best possible notice of the pending suit and it is only where personal service of summons cannot be had, that substituted or constructive service may be permitted." *Bell Federal Savings and Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 927 (1978). Section 2-203(a) of the Code allows substitute service to be made upon a defendant by "leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards." 735 ILCS 5/2-203(a) (West 2015). The affidavit of service of the person making substitute service "must show strict compliance with every requirement of the statute." *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986). The presumption of validity that attaches to a return or affidavit reciting personal service does not apply to a return reciting substitute service. *Id*. Unless the return of the person making substituted service shows "strict compliance with every requirement of the statute," the court does not have personal jurisdiction over the defendant. *Id.* at 309.

¶ 17    The process server's affidavit constitutes "*prima facie* evidence of service that cannot be set aside based upon an uncorroborated affidavit from the person served." *Central Mortgage Co.*, 2012 IL App (1st) 112353, ¶ 28 (citing *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983)). It can only be set aside by "clear and satisfactory evidence." *Id*. However, this rule applies only to "matters that are within the knowledge of the process server, such as *** who accepted the service." *Id*.

¶ 18    In this case, the process server's affidavit indicated that substitute service was made by leaving a summons and complaint with Turner's daughter, "Eyvette Dayton," at the property on June 29, 2016. The affidavit described "Eyvette Dayton," as a 41 to 45 year old black female with black hair, approximately 5 foot 4 inches to 5 foot 7 inches tall and weighing approximately 131-150 pounds. Since these matters were within the knowledge of the process server, his affidavit of service could only be set aside by "clear and satisfactory evidence." *Id.*

¶ 19    The affidavits of Turner, April Drayton, and Darryl Drayton, averred that "No person by the name 'Eyvette Dayton' resides or has resided at the property." The affidavits did not expressly deny that Yvette Drayton was served. Moreover, Turner and April both testified that Turner's daughter, "Yvette Drayton," lived in Chicago and sometimes visits her mother, but was not at the property on June 29, 2016. Yvette was not called to testify at the hearing.

¶ 20    The circuit court held that the process server's affidavit "strictly complied with the requirements" for abode service under section 2-203(a) of the Code, deeming the difference between " 'Eyvette Dayton' and 'Yvette Drayton,' as the identity of the person served, inconsequential." See *Secura Insurance Co. v. Farmers Insurance Co.*, 232 Ill. 2d 209, 217 (2009) (A "slight defect" such as "a typographical error, misspelling, or other inadvertent mistake" will not deprive the court of jurisdiction).

¶ 21    Turner argues the circuit court arbitrarily drew "a negative inference" from Yvette's "absence and silence," but not from the process server's failure to testify. Turner failed to explain why Yvette did not submit an affidavit or testify at the hearing. In contrast, the special process server's affidavit constituted *prima facie* evidence of service that cannot be set aside based on an uncorroborated affidavit from the person served. See *Nibco, Inc.*, 98 Ill. 2d at 172. "[T]he weight to be given to the assertions in the affidavit and to the testimony of the process servicer," are "peculiarly within the province of the trial court." *Abbington Trace Condominium Ass'n v.*

*McKeller*, 2016 IL App (2d) 150913, ¶ 14. The circuit court's determination that Turner and April's uncorroborated testimony was not credible was not contrary to the manifest weight of the evidence.

¶ 22                                Adequacy of Summons

¶ 23        Turner also argues that the mortgage foreclosure summons did not comply with the requirements of Illinois Supreme Court Rule 101(a) by identifying "who the parties are" with the labels "Plaintiff" and "Defendant." As this issue is purely legal in nature, our review is *de novo*. *Studentowicz v. Queen's Park Oval Asset Holding Trust*, 2019 IL App (1st) 181182, ¶ 12.

¶ 24        "To determine whether the alleged technical defects in the summons were so severe as to preclude the court from obtaining personal jurisdiction over defendant, we must place substance over form and ask whether the summons adequately notified defendant that an action had been commenced against him." *BankUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 30. In deciding the sufficiency of the summons to accomplish that aim, we "construe a summons liberally." *Owen Loan Servicing, LLC v. DeGomez*, 2020 IL App (2d) 190774, ¶ 20 (citing *In re Application of the County Treasurer & ex officio County Collector*, 307 Ill. App. 3d 350, 355 (1999)).

¶ 25        Turner does not explain how the alleged defect frustrated her ability to understand that PNC had instituted foreclosure proceedings against her. Construed liberally, we find that the technical defect in the summons did not deprive the circuit court of personal jurisdiction over Turner.

¶ 26                                Approval of Sale

¶ 27        Finally, Turner argues that the circuit court erred in approving sale of the property. "A circuit court's decision to confirm the judicial sale of property is reviewed for an abuse of discretion." *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18 (citing *Household*

*Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008)). Unless it finds that a required notice was not given, the terms of the sale were unconscionable, the sale was conducted fraudulently, or "justice was otherwise not done," a circuit court is required to confirm the sale. 735 ILCS 5/15-1508(b) (West 2020). It is the burden of the party opposing the sale to prove that any of the exceptions apply. *T2 Expressway, LLC v. Tollway, LLC*, 2021 IL App (1st) 192616, ¶ 26.

¶ 28     Turner argues that "justice could not have been done" as the court did not have personal jurisdiction over her when she "was divested of her rights to and interest in the property." We disagree. We find that the circuit court had personal jurisdiction over Turner in this case and did not abuse its discretion by confirming the judicial sale of the property.

¶ 29                                        CONCLUSION

¶ 30     For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31     Affirmed.