2025 IL App (2d) 240114-U
No. 2-24-0114
Order filed January 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| J.R., Individually and as Mother and Next Best Friend of A.R., a Minor; R.R., as Father and Next Best Friend of A.R., a Minor; and A.R., a Minor, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 21-L-31 |
| | ) | |
| J.J. and B.J., Individually and as Parents and Next Best Friends of S.J., a Minor; and S.J., a Minor, | ) ) ) | |
| | ) | Honorable |
| | ) | Jorge L. Ortiz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*: Default judgment was void for lack of personal jurisdiction where the trial court's order allowing alternative means of service required hand delivery *and* mailing, but plaintiffs did not mail the summons and complaint.

¶ 2   Plaintiffs, J.R. (individually), J.R. and R.R. (as parents and next best friends of A.R.), and A.R. obtained a default judgment against defendants, J.J. and B.J. (as parents and next best friends of S.J.), and S.J. Defendants petitioned under section 2-1401 of the Code of Civil Procedure

(Code) (735 ILCS 5/2-1401 (West 2022)) to vacate the judgment as void for want of personal jurisdiction. The trial court granted the petition. Plaintiffs appeal. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4    On January 14, 2021, plaintiffs filed a seven-count complaint against defendants. The factual basis for the complaint was that, on January 19, 2019, J.R. and A.R. were at home when S.J. entered and attacked J.R., causing her severe injuries, pain, and medical expenses and traumatizing A.R. The complaint sought recovery under theories of general negligence (count I), negligent parental supervision (count II), negligent and intentional infliction of emotional distress (counts III and IV), and battery and assault (counts V and VI). Count VII sought recovery under the "Family Expense Act," *i.e.*, section 15 of the Rights of Married Persons Act (750 ILCS 65/15 (West 2018)). Later, plaintiffs voluntarily dismissed both A.R. as plaintiff and count VII.

¶ 5    On February 3, 2021, plaintiffs filed an affidavit of service by Justin Rundall, a Lake County deputy sheriff. He stated that, on January 28, 2021, he attempted to serve process on all defendants at their putative residence in Lake Forest but could not do so because they had moved. On March 1, 2021, on plaintiffs' motion, the trial court appointed Jeffrey Caudill as a special process server to serve an alias summons on defendants.

¶ 6    On April 13, 2021, plaintiffs moved per section 2-203.1 of the Code of Civil Procedure (735 ILCS 5/2-203.1 (West 2018)) to serve defendants "by alternative means." Their motion alleged as follows. On March 7, 16, 20, 21, and 27, 2021, Caudill "attempted to serve the [d]efendants, but the [d]efendants refused to answer." The motion attached Caudill's signed report, which detailed his numerous attempts to effect personal service. These included several visits to defendants' current residence in Glenview, where he received no answer even though one or more vehicles were parked in defendants' driveway. The trial court granted plaintiffs' motion.

The court's written order stated, in pertinent part: "Plaintiffs to have Complaint hand[-]delivered to the [d]efendants' house as well as sent via US Mail."

¶ 7     The cause was continued several times, with no defendant appearing. On September 23, 2021, plaintiffs moved for a default judgment against all defendants. On September 28, 2021, the trial court entered an order continuing the cause for status on plaintiffs' motion for default and granting plaintiffs "leave to *** have a copy [of the motion] hand[-]delivered to [d]efendants' abode." On October 14, 2021, the court further continued the status hearing to November 17, 2021.

¶ 8     The record contains an October 22, 2021, letter from plaintiffs' counsel to defendants, referencing two attachments: (1) the September 23, 2021, motion for default and (2) the October 14, 2021, continuance order. The letter informed defendants that, on November 17, 2021, plaintiffs would present to the trial court the motion for default. The record also contains a copy of a certified-mail receipt card stating that the letter was delivered to all three defendants at their Glenview house. In the card's "Signature" and "Received by" spaces appear the date "10/25/21" and a set of initials, apparently "KS."

¶ 9     On November 17, 2021, the trial court found defendants in default and continued the cause for a prove-up on January 6, 2022. The court ordered plaintiffs to give defendants notice of the judgment and the prove-up. Subsequent orders continued the prove-up. Ultimately, on June 30, 2022, the court scheduled the prove-up for August 23, 2022.

¶ 10    On August 23, 2022, Caudill filed two affidavits of service. The first, dated April 19, 2021, stated as follows. On Saturday April 17, 2021, at approximately 12:15 p.m., he went to defendants' house, rang the front doorbell, and knocked loudly on the door, but got no answer. He then placed

the following items in the front mailbox of the house: "Alias Summons, Complaint & Order, (Plaintiff's [*sic*] Motion to Serve by Alternative Means), filed on April 14, 2021."

¶ 11   Caudill's second affidavit, dated August 19, 2022, stated as follows. On Saturday, July 16, 2022, he went to defendants' house and "[p]osted *** two documents on the front door of the residence": the June 30, 2022, order setting the prove-up for August 23, 2022, and a letter dated July 6, 2022, from plaintiffs' counsel to J.J. and B.J. He observed three vehicles parked on the premises. Also, after posting the documents, Caudill drove to the end of the block and turned around. As he drove back toward the house, he saw the front door closing; the person closing the door "had white paperwork in their hand and the posted documents were gone. This was approximately two minutes after posting."

¶ 12   On August 23, 2022, defendants not having appeared, the trial court heard plaintiffs' evidence of damages, attorney fees, and costs and entered a judgment for $785,397.68.

¶ 13   On October 26, 2023, defendants appeared by counsel. On November 14, 2023, they filed their section 2-1401 petition to quash the summons and vacate the judgment. The petition alleged that, although the order allowing service by alternative means required the complaint to be "hand [-]delivered" to defendants' house and sent via United States mail, the affidavits of service neither designated who was served nor stated that a copy of the complaint was mailed.

¶ 14   Each defendant's affidavit was attached to the section 2-1401 petition. Each defendant stated that he or she "never received a copy of the [s]ummons and [c]omplaint via mail (regular or certified) or otherwise or had actual knowledge of the pendency of the above litigation until after [j]udgment was entered and a copy was received as a result of the investigation into the file in August 2023."

¶ 15    The trial court allowed plaintiffs to depose defendants.  The depositions were taken remotely on December 21, 2023.

¶ 16    S.J. testified that, after moving with his parents and sister to Glenview in 2020, he lived at home except for periods when he resided at college in Chicago.  He testified to two lease periods during which he was at college.  His first lease began in January 2022 and ended in June or July 2022, and his second lease began in June or July 2022 and ended in June or July 2023.  He specifically confirmed that he lived at home in Glenview in April and October 2021.  For part of March 2021, his family vacationed in Florida.  S.J. testified that, while living at home, he was never approached by anyone trying to serve him process.

¶ 17    S.J. testified that he first learned of the lawsuit against him and his parents in July or August 2023 when he was searching online for information about his juvenile court case in connection with the 2019 attack.  He did so "[o]ut of curiosity."  In his search, he saw a reference to "[R]. v. [J]., the lawsuit."  He immediately showed it to J.J.  S.J. or J.J. soon relayed the information to B.J.

¶ 18    S.J. further testified that he had no knowledge of the sheriff ever attempting to serve him, J.J., or B.J.  When shown the certified-mail receipt card dated October 25, 2021, he testified that he did not know whose initials were signed, but they were not his.  He did not recall whether he or his parents were home that day.  He did not recall anyone ever knocking on the door and leaving papers at the front door or in the mailbox.

¶ 19    B.J. testified that she and her family moved to Glenview in October 2020.  They never had problems receiving mail.  During 2021, 2022, and 2023, no family member received any documents left on the front door.  She received no documents from plaintiffs' attorney's firm, and neither J.J. nor S.J. ever told her that he had received such documents.  Nor had she seen any letters signed by plaintiffs' attorney.  B.J. learned of the present lawsuit only in July or August 2023 when

J.J. showed her what S.J. had found online. At that point, defendants contacted their attorney, who told them about the default judgment. Before then, B.J. had not been aware that anyone was trying to serve process on defendants.

¶ 20    B.J. testified that her family was on vacation in Florida on March 16, 20, 21, and 27, 2021. When they were home, defendants did not answer their door unless someone called in advance to arrange a visit. B.J. testified that she did not recognize the signature on the certified-mail receipt card; she did not know anyone with the initials "KS" and had no idea who had signed the card. Nobody had informed her of the card or the delivery of any certified mail on October 25, 2021. She did not recall whether anyone in her family was home that day. Also, she never received notice of a letter dated June 8, 2022, from plaintiffs' attorney.

¶ 21    J.J. testified that, since 1993, he had been a self-employed private detective, working mostly online from home. J.J. first learned of the present suit from S.J., who discovered it online in August 2023. Until then, J.J. had never seen plaintiffs' motion for service by alternative means or any of the process servers' affidavits.

¶ 22    J.J. testified that his family was vacationing in Florida in middle and late March 2021. Some friends visited their home to feed their cat. J.J. never received any documents related to the present action; nothing was posted on his front door or mailed to his family at any address. He never received any correspondence from plaintiffs' attorney. Defendants' front doorbell did not work, and they did not answer their door unless they knew who was coming—a precaution necessitated by J.J.'s occupation. J.J. did not recognize the signature on the certified-mail receipt and did not know anyone with the initials "KS."

¶ 23    Plaintiffs responded to defendants' section 2-1401 petition as follows. Defendants' conduct reflected a deliberate lack of diligence. They had purposely disregarded the efforts to

serve them. Moreover, after learning of plaintiffs' suit, defendants had not diligently filed their section 2-1401 petition.

¶ 24    Defendants replied that they need not establish due diligence in filing the petition, because the default judgment was void. Defendants contended that plaintiffs had to prove that they complied strictly with the requirements for serving process, but they had not done so. In particular, the trial court required that the complaint and summons be (1) hand-delivered to defendants' house and (2) sent to defendants' house by United States mail. Yet there was no evidence that the papers were either hand-delivered or mailed to defendants. There was no proof that any defendant signed the certified-mail receipt.

¶ 25    On January 19, 2024, the trial court entered an order noting that it had heard argument on the section 2-1401 petition. The court granted the petition and vacated the default judgment. The court found that Caudill's April 19, 2021, affidavit proved that plaintiffs complied with the requirement to hand-deliver the papers. However, the court found, plaintiffs did not prove that they complied with the further requirement of service by United States mail. The court also denied plaintiffs' oral motion "to supplement the record to provide an email and/or affidavit." (We note that the record contains no report of proceedings of the hearing on defendants' petition.)

¶ 26    Plaintiffs timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    At issue is whether the grant of defendants' section 2-1401 petition was proper. Plaintiffs contend that (1) the trial court erred in finding that they failed to comply with the order granting their motion to effect service by alternative means and (2) "as a matter of public policy," they should not be "punished for defendants' negligence and disregard for the court's process."

¶ 29    We set out the general principles of review. Although, ordinarily, a section 2-1401 petitioner seeking to vacate a judgment must show both due diligence and a meritorious defense, neither of these is required when the petition attacks the judgment as void. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). A judgment entered by a court that lacks jurisdiction over the parties is void and may be attacked at any time. *Id.* at 103. To obtain personal jurisdiction over a defendant, there must be service of process in the manner directed by statute. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). A judgment entered without proper service of process is void even if the party against whom the judgment is entered actually knew of the proceedings. *Id.* at 308-09; *White v. Ratcliffe*, 285 Ill. App. 3d 758, 763-64 (1996). Where, as here, the trial court held no evidentiary hearing on the issue of personal jurisdiction, our review is *de novo*. See *Abbington Trace Condominium Ass'n v. McKeller*, 2016 IL App (2d) 150913, ¶ 10.

¶ 30    We turn to plaintiffs' first argument on appeal. Under section 2-203.1 of the Code, if service upon an individual by the method specified in section 2-203 of the Code (735 ILCS 5/2-203 (West 2020)) is impractical, the plaintiff may move the court to "enter an order directing a comparable method of service." *Id.* § 2-203.1. The court may order service to be made "in any manner consistent with due process." *Id.*

¶ 31    Here, the trial court required that plaintiffs "have [the] Complaint hand[-]delivered to the [d]efendants' house *as well as* sent via US Mail." (Emphasis added.) The court found that plaintiffs effectuated hand-delivery but not delivery by United States mail. Plaintiffs contend that they complied with the trial court's order by "serving by registered U.S. mail *or* by posting the summons on [d]efendants [*sic*] door." (Emphasis added.) However, plaintiffs simply misread the court's order: the phrase "as well as" plainly conveyed that both methods of service were required,

not merely one "or" the other. Plaintiffs do not contend that they served defendants by United States mail.

¶ 32 We agree with the trial court that the default judgment was void for want of personal jurisdiction over any of the defendants, given (1) the plain meaning of the court's order requiring service by United States mail, (2) plaintiffs' implicit concession that they did not serve defendants by United States mail, and (3) the absence of evidence of service by United States mail.

¶ 33 Plaintiffs' second argument is that "public policy" considerations require us to reverse the trial court's judgment. Plaintiffs contend that they should not be "punished for [d]efendants' own negligence, indifference, and disregard of the [trial] court's process."

¶ 34 We agree with defendants that plaintiffs have forfeited their "public policy" argument by failing to raise it in the trial court. An appellant may not obtain relief based on a theory not raised in the trial court. *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975); *WC Media, Inc. v. Village of Gilberts*, 2020 IL App (2d) 190250, ¶ 22. Further, we agree with defendants that, forfeiture aside, plaintiffs' argument lacks a sufficient legal basis. Relying on their subjective characterization of defendants' conduct, plaintiffs essentially ask us to disregard the established authority on which the trial court's judgment is based. Although plaintiffs might consider the result harsh, the court did not err in finding that plaintiffs failed to comply with its order allowing alternative service by the means clearly specified therein resulting in a failure to obtain personal jurisdiction over the defendants.

¶ 35                                    III. CONCLUSION

¶ 36 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 37 Affirmed.